UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

**Not for Publication**

| | |
|---|---|
| WILLIAM DEAN CALLAS,<br><br>*Plaintiff,*<br><br>v.<br><br>PENNY CALLAS, GEORGE CALLAS, AND YVONNE CALLAS IN THEIR CAPACITIES AS THE CO-EXECUTORS OF THE ESTATE OF CONSTANTINE CALLAS,<br><br>*Defendants.* | Civil Action No. 14-7486<br><br>**OPINION** |

**John Michael Vazquez, U.S.D.J.**

This case concerns a dispute among siblings as to amounts owed to their deceased father's estate. Presently, three motions are pending before the Court: (1) Plaintiff William Callas' ("Plaintiff") motion to dismiss Count Six of the amended counterclaims filed by Defendants George Callas and Yvonne Callas ("Defendants") and for recovery of fees and costs Plaintiff incurred in connection with this motion (D.E. 21); (2) Defendants' appeal of Magistrate Judge Clark's December 7, 2016 Order denying their request to file a motion for lack of subject matter jurisdiction (D.E. 121); and (3) Defendants' appeal of Magistrate Judge Clark's December 7, 2016 Order denying Defendants' motion to compel a response to their subpoena on Stern & Kilcullen (D.E. 124).[1] All motions are opposed. These motions were decided without oral argument

---

[1] Plaintiff's brief in support of his motion to dismiss Count Six of the amended counterclaims will be referred to hereinafter as "Pl. Br." (D.E. 21), Defendants' opposition to Plaintiff's brief will be referred to hereinafter as "Def. Opp'n" (D.E. 25), and Plaintiff's Reply Brief in support of its motion will be referred to hereinafter as "Pl. R.Br." (D.E. 28).

pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. The Court has considered the parties' submissions and denies Plaintiff's motion to dismiss Count Six, and denies each of Defendants' appeals.

## I. BACKGROUND

The following facts are derived from Defendants' amended counterclaims. D.E. 17 ("AC").[2] Plaintiff brought this action against the executors of the estate of his late father (the "Estate"), Constantine Callas ("Constantine"), to settle a dispute over the value of Constantine's ownership interest in a real estate holding company, Coffee Associates LLC ("LLC"). Plaintiff and his father were the only members of the LLC, which was governed by an operating agreement ("Operating Agreement" or "the Agreement"). Def. Br., Ex. A. The LLC's primary asset is real estate in Edgewater, New Jersey (the "Property"). *Id.* ¶¶ 7, 9, 11. Prior to Constantine's death, he held a 40% interest in the LLC, and Plaintiff held a 60% interest. *Id.* ¶¶ 7, 9. Constantine passed away on February 23, 2013. *Id.* ¶ 23. Penny Callas,[3] George Callas and Yvonne Callas, Plaintiff's siblings and Constantine's children, are the co-executors of the Estate. *Id.* ¶ 26.

---

Defendants' appeal of Magistrate Judge Clark's December 7, 2016 Order denying their request to file a motion for lack of subject matter jurisdiction will be referred to hereinafter as "Def. Jdx Br." (D.E. 121), Plaintiff's Opposition to Defendants' appeal will be referred to hereinafter as "Def. Jdx Opp'n" (D.E.154), and Defendants' reply brief in support of its appeal will be referred to hereinafter as "Pl. Jdx R.Br." (D.E. 157).

Defendants' appeal of Magistrate Judge Clark's December 7, 2016 Order denying Defendants' motion to compel a response to their subpoena on S&K will be referred to hereinafter as "Def. SMJ Br." (D.E. 124), Plaintiff's opposition to Defendants' appeal will be referred to hereinafter as "Pl. SMJ Opp'n" (D.E. 155), and Plaintiff's reply brief in support of its motion will be referred to hereinafter as "Def. SMJ R.Br." (D.E. 158).

[2] When reviewing a motion to dismiss a counterclaim, "the assertions of the counterclaim are assumed to be true [and] all reasonable inferences are drawn in favor of the counterclaim-plaintiff." *Green v. William Mason & Co.*, 976 F. Supp. 298, 300 (D.N.J. 1997).

[3] Penny Callas is a party to the lawsuit but did not join in Defendants Yvonne and George's amended counterclaims. Therefore, for this Opinion only, "Defendants" refers to Yvonne and George, and does not include Penny.

The Operating Agreement includes a provision which states that "on the passing of a member, the personal representative(s) of the deceased member may give notice requiring the other member to purchase the deceased member's interest in [the LLC]." *Id.* ¶ 29. The notice is called a "Put Notice." *Id.* Upon Constantine's death, Defendants exercised this "Put Notice" by giving Plaintiff notice of their right to have Plaintiff purchase the Estate's membership in the LLC. *Id.* ¶ 30. The Operating Agreement provides for a means to calculate the purchase price of the membership interest. *Id.* ¶ 32.

The current disagreement concerns the value of the Property. *Id.* ¶ 11. Defendants claim the Property has an $8.6 million value, while Plaintiff claims that it is worth $2.7 million. *Id.* ¶¶ 35, 37. Plaintiff demanded the Estate convey its membership interest in the LLC to him on or before December 31, 2014 based on the $2.7 million amount. *Id.* ¶ 43. However, Defendants believe that Plaintiff's valuation does not reflect the true value of the property, and therefore declined to convey the Estate's interest in the Property. *Id.* ¶ 44. Both sides maintain that they are "ready, willing and able" to sell/buy the interest in the LLC. *Id.* ¶ 45; Compl. ¶ 38.

## II. PROCEDURAL HISTORY

Plaintiff filed his complaint on December 2, 2014, alleging three causes of action (1) Anticipatory Breach and Repudiation of the Operating Agreement; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (3) Specific Performance. D.E. 1. Defendants filed their initial answer and counterclaims on January 14, 2015, alleging, among other things, that Plaintiff's appraisal understates the value of the Property and seeking a judgment ordering Plaintiff to complete the conveyance of the 40% membership interest. D.E. 12. Defendants subsequently filed an amended answer and counterclaims on January 27, 2015. D.E. 17. The counterclaims set forth six causes of action: (1) Breach of Operating Agreement; (2) Breach of Covenant of Good

3

Faith and Fair Dealing; (3) Breach of Fiduciary Duty; (4) Specific Performance; (5) Accounting; and (6) Member Oppression pursuant to the Revised Uniform Limited Liability Company Act (the "Act"). *Id.* On February 24, 2015, Plaintiff filed his motion to dismiss Count Six of Defendants' amended counterclaims. Pl. Br. Defendants opposed this motion. Def. Opp'n. Subsequently, on August 19, 2015, Judge Cecchi referred this case to mediation, and terminated Plaintiff's motion to dismiss without prejudice. D.E. 40. When mediation was not successful, the Court reinstated Plaintiff's motion. D.E. 75.

During discovery, Defendants served a subpoena on Plaintiff's attorneys, Stern & Kilcullen ("S&K"), because it was the same law firm that had represented Constantine concerning estate matters. The subpoena was initially served in January, 2009. After a dispute over the subpoena, Judge Clark directed Defendants to narrow and then re-serve the subpoena. D.E. 69. Defendants served their revised subpoena on April 20, 2016. Subsequently, on May 4, 2016, S&K served their objections to the subpoena. D.E. 70-2. Defendants then moved to compel Plaintiff to comply with the subpoena. D.E. 70, 72, 76. On November 10, 2016, Defendants also requested permission from Judge Clark to file a motion to dismiss for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or alternatively, for leave to again amend Defendants' amended answer. D.E. 107.

Judge Clark, on December 7, 2016, granted Defendants' request to further amend their answer and denied without prejudice Defendants' request to file a motion to dismiss for lack of subject matter jurisdiction. D.E. 117 ¶¶ 3, 4. Additionally, Judge Clark denied Defendants' request to compel S&K to produce responsive documents to Defendants' subpoena. *Id.* ¶ 5. Defendants appeal both of Judge Clark's rulings.

### III. STANDARD OF REVIEW

A. Rule 12(b)(6)

Rule 12(b)(6) of the Federal Rules of Civil Procedure permits a party to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]" In most cases, a motion to dismiss is made by a defendant regarding allegations in the plaintiff's complaint. The Supreme Court addressed the appropriate pleading standards in such instances in *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007) and *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). There, the Supreme Court held that to withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted). As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008). A court, however, is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F.3d 187, 211 (3d Cir. 2007). If, after viewing the allegations in the complaint most favorable to the plaintiff, it appears that no relief could be granted under any set of facts consistent with the allegations, a court may dismiss

the complaint for failure to state a claim. *DeFazio v. Leading Edge Recovery Sols.*, No. 10-2945, 2010 WL 5146765, at *1 (D.N.J. Dec. 13, 2010).

Counterclaims are similarly analyzed pursuant to the plausibility standard set out in *Iqbal* and *Twombly*. *Read v. Profeta*, No. 15-2637, 2017 WL 123438, at *2 (D.N.J. Jan. 11, 2017). Thus, "the rules applicable to the review of complaints apply to the Court's review of [d]efendants' [c]ounterclaim." *Coldwell Banker Real Estate, LLC v. Plummer & Assocs., Inc.*, No. 09-1313, 2009 WL 3230840, at *1 (D.N.J. Oct. 2, 2009).

B. Appeals from a Magistrate Judge

A magistrate judge may hear and determine any non-dispositive pretrial matter pursuant to 28 U.S.C. § 636(b)(1)(A). A district court may only reverse a magistrate's decision on these matters if it is "clearly erroneous or contrary to law." 28 U.S.C. § 636(b)(1)(A); Fed. R. Civ. P. 72(a); L. Civ. R. 72.1(c)(1)(A). "[A] finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985). Under this standard, a district court "will not reverse the magistrate judge's determination even if the court might have decided the matter differently." *Bowen v. Parking Auth. of City of Camden*, No. 00-5765, 2002 WL 1754493, at *3 (D.N.J. July 30, 2002). The court will, however, "conduct a *de novo* review a magistrate judge's legal conclusions." *Cooper Hosp./Univ. Med. Ctr. v. Sullivan*, 183 F.R.D. 119, 127 (D.N.J. 1998).

"Where the appeal seeks review of a matter within the exclusive authority of the Magistrate Judge, such as a discovery dispute, an even more deferential standard, the abuse of discretion standard, may be applied." *Miller v. P.G. Lewis & Assocs., Inc.*, No. 05-5641, 2006 WL 2770980, at *1 (D.N.J. Sept. 22, 2006). An abuse of discretion occurs "when the judicial action is arbitrary,

6

fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable [person] would take the view adopted by the trial court." *Ebert v. Twp. of Hamilton*, No. 15-7331, 2016 WL 6778217, at *2 (D.N.J. Nov. 15, 2016). "This deferential standard is especially appropriate when the Magistrate Judge has managed [the] case from the outset and developed a thorough knowledge of the proceedings." *Id.*

## IV. DISCUSSION

### A. Motion to Dismiss

In Count Six of Defendants' amended counterclaims, they allege that "William Callas has engaged in conduct intended to oppress, and which does oppress, the Estate as a minority member of Coffee Associates LLC." AC ¶ 79. Because of this, Defendants argue, they are entitled to remedies pursuant to the Act, "including an order dissolving Coffee Associates LLC on the ground that William Callas, as the managing member in control of the company, has acted in a manner that is illegal, fraudulent, and oppressive and is, or will be directly harmful to the Estate." *Id.* ¶ 80.

Plaintiff argues that Count Six should be dismissed because the Act provides that only a member of the LLC may apply for dissolution, and the Estate is not a member of the LLC as a matter of law. Pl. Br. at 2. Upon Constantine's death, Plaintiff contends, Constantine's membership in the LLC was dissociated pursuant to the Act. *Id.* at 4-6. Additionally, Plaintiff argues that Constantine's dissociation "would have been independently triggered by the Estate's February 21, 2014 exercise of its 'Put' option pursuant to Operating Agreement Section 14.2." *Id.* at 6. Finally, Plaintiff contends that he is entitled to reasonable fees incurred in connection with his motion. *Id.* at 7-8.

7

Defendants respond that contract interpretation should not be determined on a motion to dismiss unless it is unambiguous, and it is too early to determine whose interpretation is correct. Def. Br. at 4. Defendants further argue that they are standing in the shoes of Constantine and asserting claims on his behalf that accrued while he was alive. Therefore, it is Constantine's membership interest, not that of the Estate, that is at issue according to Defendants. *Id.* at 5-6. Defendants, referring to both the Operating Agreement and the Act, conclude that "any deceased member's interest is not impacted by death." *Id.* at 6-8. Lastly, Defendants request fees and costs as well as the appointment of a provisional manager to manage the affairs of the Estate. *Id.* at 8-9.

In the Court's view, the outcome of this motion turns on whether the present dispute is governed by the Act or the Operating Agreement. The Act specifically provides that, in cases where there is an operating agreement, "the operating agreement governs . . . relations among the members as members and between the members and the limited liability company." N.J.S.A. 42:2C-11; *see also Foster Owners Co. LLC v. Farrell*, No. 14-5120, 2015 WL 778758, at *1 n.2 (D.N.J. Feb. 24, 2015) (analyzing the relationships between members of a limited liability company pursuant to its operating agreement as required by the Act). The Act provides that an operating agreement will not control if certain exceptions are met. *See* N.J.S.A. 42:2C-11 (listing exceptions). Additionally, the Act states that it was intended "to be liberally construed to give the maximum effect to the principle of freedom of contract and to the enforceability of operating agreements." N.J.S.A. 42:2C-11(i). Thus, the Act was meant to "encourage[] LLC members to collectively devise an individualized governance and management plan that best advance[s] the goals of their business." *IE Test, LLC v. Carroll*, 226 N.J. 166, 177-78 (2016). Therefore, the Act controls only in the absence of an operating agreement or if a listed exception applies. *Brick Prof'l,*

8

*L.L.C. v. Napoleon*, No. A-1283-08T3, 2009 WL 2176699, at *3 (N.J. App. Div. July 23, 2009); *Union Cty. Improvement Auth. v. Artaki*, 392 N.J. Super 141, 152 (App. Div. 2007) ("In the absence of an operating agreement, the [Act] provisions control.").

The Operating Agreement here defines "members" as follows:

> Members shall mean at any time the persons who own Interests in the LLC, or, with respect to any transfer of all or any portion of an Interest pursuant to Article [10], the transferor of such Interest, unless and until the transferee thereof is admitted as a Member to the extent of the Interest transferred pursuant to Section 10.3.

Def. Br., Ex. A § 1.18.  Article 10 addresses "Transferability of LLC Interests," and Section 10.3 provides that:

> Any transferee of an Interest in the LLC pursuant to a Transfer hereunder shall receive and hold the Interest in the LLC so transferred subject to the terms and conditions of this Agreement as though a party hereto, and no Transfer of the whole or any portion of such LLC interest shall be made to such transferee (by conveyance, operation of law or otherwise), and such transferee shall not become a substituted Member in the LLC, unless and until such transferee is approved by all other Members and he or she executes and delivers to the Management Committee a counterpart of this Agreement, and such other instruments and documents as the Management Committee deems necessary or desirable, evidencing such transferee's agreement to be bound by all of the terms and conditions of this Agreement.

Def. Br., Ex. A § 10.3.  The Agreement thus makes clear that a member's interest cannot be transferred until it is approved by all other members.

Yet, Article 14 of the Agreement governs the "Death or Disability" of members, which addresses "all of the Interest owned by such Deceased Member or Disabled Member." *Id.* § 14.1. Section 14.2 gives the personal representatives of the "deceased member" the option to provide written notice ("the Put Notice") to the other members within one year of the date of death. *Id.* § 14.2(b). Once the Put Notice is given, the personal representatives of the deceased member are "obliged to sell, and the other members [are] obliged to buy all . . . of the Interest of such Deceased

9

Member." *Id.* Article 14 goes on to explain how to evaluate the purchase price of the interest and other requirements about closing on the sale. *Id.* § 14.2(c) & (d).

Thus, in this case there is an Operating Agreement that addresses the relationship between the LLC's members, and specifically indicates what happens to a member's interest upon death. In addition, no party argued that any of the statutory exceptions of the Act applied to the Operating Agreement. Therefore, it is the Operating Agreement, not the statute, that governs this dispute. *See Brick Prof'l L.L.C.*, 2009 WL 2176699, at *3 (finding that an operating agreement that covers the death of a member controls over the Act's provisions on the issue). Plaintiff's argument relies almost entirely on the Act. As noted, however, he does not point the Court to any limitations or exceptions which apply to bring this case outside the bounds of the Operating Agreement. The Court will therefore construe the current dispute pursuant to the Operating Agreement.

Both parties agree that proper Put Notice was given pursuant to the Operating Agreement. However, the central issue here is the status of a deceased member's interest before the closing of the sale of that member's interest in the LLC. Defendants argue that "the Operating Agreement recognizes that a deceased member is still a member of the LLC until his interest is sold." Def. Opp'n. at 2. Plaintiff counters that Defendants are essentially arguing that a transfer occurred (from the deceased member to his estate) and that such a transfer cannot occur unless and until Plaintiff (as the only other member) agrees to it. Pl. R.Br. at 2-3. Defendants respond that the transfer provision and the death or disability provision are separate sections of the Operating Agreement. Defendants also point out that Plaintiff is essentially claiming that he is, in reality, now a 100% owner of the LLC because Constantine's interest was extinguished on his death. Def. Opp'n at 6.

While the Operating Agreement controls, it is arguably ambiguous as to the status of a deceased member's interest in between his time of death and the time his interest is sold. *See Educ. Impact, Inc. v. Danielson*, No. 14-937, 2015 WL 381332, at *9 (D.N.J. Jan. 28, 2015) (finding that a contract was, at a minimum, ambiguous and therefore denying defendant's motion to dismiss). The Court need not reach the ambiguity issue because Plaintiff has not met his burden on this motion. Plaintiff's motion is essentially based on provisions of the Act. But the Operating Agreement, rather than the Act, governs the issue before the Court. To that end, Plaintiff fails to address, in any detail, the impact of the Operating Agreement regarding Constantine's membership upon his death. The Court will therefore deny Plaintiff's motion to dismiss Count Six without prejudice.

Additionally, Plaintiff seeks attorneys' fees and costs associated with his motion pursuant to N.J.S.A. 42:2C-48(b), on the ground that Defendants were "vexatious" in filing Count Six. Pl. Br. at 6-7. Defendants respond with a request for their own fees in defending the motion, as well as the appointment of a custodian or provisional manager to manage the affairs of the LLC during the pendency of this litigation. Def. Opp'n at 8-9. The Court denies the requests for fees and costs as well as Defendants' request for an appointment. Plaintiff did not prevail, and Defendants did not cross-move for the relief they seek. However, the Court's ruling does not mean that it would have otherwise awarded the relief sought if Plaintiff had prevailed or if Defendants had properly cross-moved.

### B. Appeals of Magistrate Clark's Orders

Also before this Court is Defendants' appeal from Judge Clark's ruling denying Defendants' request to file a motion to dismiss based on subject matter jurisdiction. Defendants argue that the LLC is a necessary party to the current litigation, and that once the LLC is joined,

subject matter jurisdiction will cease since the parties will no longer be diverse. Def. Jdx Br. at 8-10.

Plaintiff responds with three arguments: (1) Defendants requested leave to file their motion for summary judgment in the alternative to filing a motion to amend and Judge Clark allowed them to file a motion to amend; (2) Defendants core argument, that the LLC is a "required party" to this action, is erroneous; and (3) Defendants did not demonstrate "good cause" as required to modify a pretrial scheduling order. Pl. Jdx Opp'n at 5-6.

Defendants argue that *if* the LLC were joined, then subject matter jurisdiction would be destroyed. Neither party argues that, as the case currently stands, there is no diversity. As it currently stands, the parties are completely diverse as required by 28 U.S.C. § 1332. Defendants' motion is procedurally improper. Defendants first had to bring a motion to join the LLC as a necessary party pursuant to Rule 19. If that motion was granted, then Defendants could move to dismiss for lack of subject matter jurisdiction. *See* Fed. R. Civ. P. 19. Alternatively, Defendants could have brought a motion to dismiss pursuant to Rule 12(b)(7), for failure to join a party under Rule 19. *See* Fed. R. Civ. P. 12(b)(7). Defendants, however, did not make this motion either.

Even if the Court were to overlook this procedural defect, the issue of whether the LLC is a necessary party has not been fully briefed. Therefore, ruling on the issue now would be premature. Thus, the Court denies Defendants' appeal and affirms Judge Clark's ruling.

Defendants' final motion seeks a reversal of Judge Clark's order denying Defendants' request to compel S&K to comply with Defendants' subpoena. The gist of Defendants' argument is that S&K represented Constantine regarding his Estate. Def. SMJ Br. Since the Operating Agreement is ambiguous, argue Defendants, Constantine's intent is crucial to the dispute, and compliance with the subpoena is the only way to ascertain the deceased Constantine's intent. *Id.*

at 8-9. In other words, Defendants believe that they will be able to discover evidence of Constantine's intent in S&K's file.

Discovery of documents from a nonparty may be achieved pursuant to Federal Rule of Civil Procedure 45. A subpoena under Rule 45 "must fall within the scope of proper discovery under Fed. R. Civ. P. 26(b)(1)." *Kull v. Arrowood Indem. Co.*, No. 13-4343, 2013 WL 5603924, at *5 (D.N.J. Oct. 11, 2013). Generally, the scope of discovery pursuant to Rule 26(b)(1) is broad, with parties allowed to "obtain discovery regarding any non-privileged matter that is relevant to any party's claim or defense." *Id.* Nonetheless, courts must consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(1).

Additionally, Rule 26(b)(2)(C) "grants the Court considerable authority to limit a party's pursuit of otherwise discoverable information where the burden of a discovery request is likely to outweigh the benefits." *Salamone v. Carter's Retail, Inc.*, No. 09-5856, 2012 WL 821494, at *4 (D.N.J. Mar. 9, 2012). Thus, the Court is directed to limit the frequency or extent of discovery if it determines that:

> (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1).

*Id.*; *see also Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999) ("Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed . . . The Federal Rules of Civil Procedure expressly allow a district court to use

its discretion and deny discovery requests if the material sought is 'unreasonably cumulative.'") (internal citations omitted).

Initially, the Court notes that although Defendants argue that Judge Clark's decision was "erroneous" and "contrary to law," it is the abuse of discretion standard that applies here. *See Miller*, 2006 WL 2770980, at *1 (finding that discovery disputes are non-dispositive motions that are entirely within the discretion of the Magistrate and therefore a district court should apply the "abuse of discretion" standard). Defendants have presented no credible evidence that Judge Clark applied the wrong legal standard. Additionally, Judge Clark is intimately familiar with this case – as it has been pending before him for over two years and there have been numerous discovery disputes raised. In fact, to date, there are approximately 179 entries on the docket. Thus, Judge Clark's Order warrants significant deference. *See Ebert*, 2016 WL 6778217, at *2.

Judge Clark already gave Defendants a second opportunity to draft a subpoena that would comply with the discovery rules. Defendants failed to adequately narrow the scope of their subpoena as directed. Moreover, Judge Clark has considerable discretion to determine that the material sought is "unreasonably duplicative," or otherwise limit the extent of discovery. Here, Judge Clark determined that the information was not in compliance with his previous order to narrow the subpoena and was duplicative of previous requests. D.E. 125.1 Tr. 26:01-26:15. Additionally, Judge Clark determined that the information sought was not "proportional" or "relevant" to the present case. *Id.* Therefore, Judge Clark appropriately weighed the considerations set out in Rules 26 and 45 and did not abuse his discretion in denying Defendants' motion to compel.

Defendants also contend that the Estate is entitled to all documents in Constantine's file because they are Constantine's property. Def. Sub. Br. at 9. In support of this, Defendants cite to

14

the New Jersey Advisory Committee on Professional Ethics, Opinion 692. Def. Sub. R.Br. at 6-7. They additionally argue that, while Plaintiff asserted the attorney-client privilege, it is the Estate that is the holder of Constantine's privilege and therefore entitled to all documents S&K has concerning Constantine. *Id.* at 9-10.

Defendants are correct that Opinion 692 governs the regulations by which an attorney must retain client files following the final disposition of a matter. The fact that certain documents may be the property of the Estate, however, does not mean that they are relevant or discoverable pursuant to Rule 26 *in this matter*. Thus, this argument bears no weight as to whether these documents should be produced in response to a subpoena in *this* litigation. The same is true with Defendants' claim of privilege. Defendants appear to conflate the two issues: first, the scope of discovery in this case, and, second, the Estate's separate and independent right to seek Constantine's legal files from his former lawyers. If Defendants believe that the Estate has a right to seek such information, nothing in Judge Clark's ruling or in this Opinion prohibits them from doing so. However, the current litigation is not the proper avenue through which to do so.

This Court therefore denies Defendants' appeal and affirms Judge Clark's decision as to the subpoena.

### V. CONCLUSION

In sum, the Court **DENIES** Plaintiff's motion to dismiss Count Six without prejudice. The parties related requests for fees and costs are also **DENIED** as is Defendants' request for the appointment of a provisional manager. The Court also **DENIES** Defendants' appeal of Magistrate Judge Clark's ruling denying Defendants' request to file a motion for lack of subject matter jurisdiction and Magistrate Judge Clark's Order is **AFFIRMED**. Lastly, the Court **DENIES** Defendants' appeal of Magistrate Judge Clark's ruling denying Defendants' motion to compel a

response to their subpoena on S&K and Magistrate Judge Clark's order is **AFFIRMED**. An appropriate Order accompanies this Opinion.

**Date:** March 24, 2017

                                                  JOHN MICHAEL VAZQUEZ
                                                  **UNITED STATES DISTRICT JUDGE**