# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| **WILLIAM DEAN CALLAS,** <br><br> Plaintiff, <br><br> v. <br><br> **PENNY CALLAS,** et al., <br><br> Defendants. | **Civil Action No. 14-7486 (JMV)** <br><br> **OPINION AND ORDER** |

**CLARK, Magistrate Judge**

    **THIS MATTER** comes before the Court on Defendants' George Callas and Yvonne Callas': (1) motion for leave file a Third Amended Answer and Counterclaim to assert a cause of action for fraudulent transfer pursuant to New Jersey's Uniform Fraudulent Transfer Act ("UFTA") [Dkt. No. 143]; and (2) application to compel Plaintiff William Dean Callas to produce certain financial documents which post-date the filing of the Complaint [Dkt. No. 178]. Plaintiff opposes Defendants' motion to amend [Dkt. No. 168] and Defendants' application to compel [Dkt. No. 180]. For the reasons set forth below, Defendants' motion to amend [Dkt. No. 143] is **DENIED** and Defendants' application to compel [Dkt. No. 178] is **GRANTED in part and DENIED in part**.

## I.    BACKGROUND

    The parties in this case, Plaintiff William Dean Callas and Defendants Penny Callas, Yvonne Callas, and George Callas, are the children of Constantine Callas.[1] Constantine Callas

---

[1] As all parties to this action share the same last name, in this Opinion and Order, the Court may refer to the parties by their first names. The Court will also refer to William as "Plaintiff" and to George and Yvonne collectively as "Defendants" because Penny is not involved in the disputes which form the basis of the present motions.

passed away on February 23, 2013 and the parties' various claims arise out of a dispute among the siblings as to amounts owed to Constantine's estate (the "Estate"). William brought this action against the executors of the Estate to settle a dispute over the value of Constantine's ownership in a real estate holding company, Coffee Associates LLC (the "LLC"). William and Constantine were the only members of the LLC, which was governed by an operating agreement (the "Operating Agreement"). Prior to Constantine's death, he held a 40% interest in the LLC, which is now part of the Estate, and William held a 60% interest. Penny, George, and Yvonne, William's siblings and Constantine's children, are the co-executors of the Estate.

The Operating Agreement includes a provision which states that "on the passing of a member, the personal representative(s) of the deceased member may give notice requiring the other member to purchase the deceased member's interest in [the LLC]." The notice is called a "Put Notice." Upon Constantine's death, Defendants exercised this "Put Notice" by giving Plaintiff notice of their right to have Plaintiff purchase the Estate's 40% interest in the LLC. The Operating Agreement sets forth a means to calculate the price of the ownership interest. The LLC's primary asset is a property located in Edgewater, New Jersey (the "Property").

A portion of the Property was, and continues to be, used to operate a Coffee Associates, Inc., (the "Coffee Business") which was started by Constantine. William began working for the Coffee Business in 1989 and now, as a result buying out the other owners of the Coffee Business, including Constantine, William owns 100% of the Coffee Business. According to William, the LLC was created "for the limited purpose of acquiring and taking sole ownership of the Property, in order to ensure [the Coffee Business'] ability to continue occupying and operating . . . on the Property." Compl. at ¶ 17. To this end, the Coffee Business operates on the Property pursuant to various leases executed between the LLC and the Coffee Business. The

most recent lease, which is the subject of Defendants' present motion to amend, was executed in March of 2006 (the "Lease"). *See* Dkt. No. 76 at Ex. 4. The Lease is for a term of ten years, commencing on January 1, 2006, and provides the Coffee Business with the option to renew the Lease for six additional five-year terms. William signed the Lease on behalf of both the LLC and the Coffee Business.

Although it is not the only issue in this case, the overarching disagreement between the parties in this matter concerns the value of the Property. Defendants assert that the Property has a value of $8.6 million, while Plaintiff claims that it is only worth $2.7 million. As a result of the disagreement between the parties as to the value of the Property, and therefore, the value of the Estate's portion of the LLC, Defendants declined to convey the Estate's interest in the LLC to Plaintiff pursuant to the Operating Agreement. Plaintiff filed his Complaint on December 2, 2014, alleging three causes of action: (1) Anticipatory Breach and Repudiation of the Operating Agreement; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (3) Specific Performance. *See* Dkt. No. 1. George and Yvonne filed their Answer and Counterclaim on January 14, 2015 [Dkt. No. 12], and filed an Amended Answer and Counterclaim on January 27, 2015 [Dkt. No. 17]. Defendants' Amended Counterclaim asserts six causes of action for: (1) Breach of the Operating Agreement; (2) Breach of the Covenant of Good Faith and Fair Dealing; (3) Breach of Fiduciary Duty; (4) Specific Performance; (5) Accounting; and (6) Member Oppression pursuant to the Revised Uniform Limited Liability Company Act (the "Act"). *See* Dkt. No. 17.

## II. DISCUSSION

### A. Defendants' Motion for Leave to File a Second Amended Answer and Counterclaim [Dkt. No. 143].

Defendants' Amended Counterclaim alleges that the Lease "was not and is not an arms-length transaction" and that its terms, which include "disproportionately low rent", a requirement that the LLC pay the real estate taxes on the Property, and an option for Plaintiff to renew the Lease for an extended period of time, improperly favor Plaintiff to the detriment of the Estate. Dkt. No. 17 at ¶ 22. According to Defendants, the terms of the Lease result in Plaintiff "obtaining [a] greater indirect benefit as [the] owner of [the Coffee Business] from the leasing of the [P]roperty than he would obtain as a member of [the LLC]." *Id.* at ¶ 23. Although Defendants' claims regarding the improper execution of the Lease and its detrimental effect on the Estate have been asserted since the filing of Defendants' initial Answer and Counterclaim, on November 10, 2016, Defendants submitted a letter to the Court requesting permission to file a motion to dismiss Plaintiff's complaint for lack of subject matter jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(1), or, in the alternative, for leave to file a Second Amended Answer and Counterclaim to assert an additional counterclaim voiding the Lease as a fraudulent transfer under the UFTA. *See* Dkt. No. 107. The Court granted Defendants leave to file a motion to amend [Dkt. No. 141], which Defendants filed on January 13, 2017 [Dkt. No. 143]. Plaintiff opposes Defendants' motion to amend [Dkt. No. 168].

In their motion to amend, Defendants seek to add a claim under the UFTA voiding the Lease as well as prior leases "as fraudulent transfers made for less than fair consideration and with the intent to hinder, delay, and defraud the Estate" in violation of New Jersey law. Dkt. No. 107 at p. 1. Defendants contend that they only recently obtained a copy of the Lease and were not aware until the October 11, 2016 settlement conference held in this matter that Plaintiff

"would claim that the Property could not be valued at its highest and best use because it was burdened by the [Lease]." Dkt. No. 144 at p. 2. The position taken by Plaintiff regarding the effect of the Lease on the value of the Property, Defendants claim, evidences Plaintiff's intent to "devalue the Estate's interest in the Property" through the execution of the Lease. Dkt. No. 170 at p. 9. According to Defendants, Plaintiff executed the Lease to "put assets beyond the reach of the Estate" which now makes it "impossible for the Property to be fairly valued." Dkt. No. 144 at p. 7. Accordingly, Defendants claim that the addition of a counterclaim to void the Lease as a fraudulent transfer is necessary to protect the Estate's interest in the Property and prevent Plaintiff from being rewarded for his "dishonest conduct." Dkt. No. 170 at p. 6.

In opposition to Defendants' motion, Plaintiff claims that not only have Defendants long been in possession of the Lease, as evidenced by the inclusion of the terms of the Lease in their initial and amended Answer and Counterclaims, but that Defendants have repeatedly been made aware Plaintiff's position regarding the effect of the Lease on the value of the Property, which was first asserted in Paragraph 45 of Plaintiff's Complaint and has been part of Plaintiff's arguments throughout this matter.[2] Plaintiff argues that Defendants' proposed amendment is untimely and represents "yet another attempt by [Defendants] to unreasonably and vexatiously multiply these proceedings . . . ." Dkt. No. 168 at p. 3.

---

[2] The Court notes the difference in the parties' characterizations of Plaintiff's position regarding the effect of the Lease on determining the proper valuation of the Property. Defendants assert in their motion that Plaintiff is using the Lease to support an argument that the existence of the Lease prevents the Property from being "valued at its highest and best use . . . ." Dkt. No. 144. Plaintiff, in opposition, states that it is not his position that the existence of the Lease precludes a valuation of the Property at its "highest and best use", but rather that Defendants' are overestimating the value of Property, in part because of their failure to account for the Lease in their proposed valuation. At the core of this matter is a disagreement between the parties as to the proper valuation of the Property, which includes the parties' contrasting assertions as to the Property's "highest and best use." Although Defendants and Plaintiff have presented differing characterizations of the motive behind the execution of the Lease and disagree as to whether the existence of the Lease "makes it impossible for the Property to realize its full value", the question for the purposes of Defendants' present motion is whether Defendants were previously aware of Plaintiff's position that the Lease should be taken into account when formulating the proper valuation of the Property.

5

"The threshold issue in resolving a motion to amend is the determination of whether the motion is governed by Rule 15 or Rule 16 of the Federal Rules of Civil Procedure." *Karlo v. Pittsburgh Glass Works, LLC,* 2011 WL 5170445, at *2 (W.D.Pa. Oct. 31, 2011). Rule 15 states, in pertinent part, "a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires." Fed. R. Civ. P. 15(a)(2). "Rule 16, on the other hand, requires a party to demonstrate 'good cause' prior to the Court amending its scheduling order." *Karlo,* 2011 WL 5170445, at *2 (citing Fed. R. Civ. P. 16(b)(4)). In situations such as the present, where a party seeks to amend "after the deadline for doing so set by the Court, the movant must satisfy the [good cause standard] of Rule 16 before the Court will turn to Rule 15." *Id.* at *2; *see also Dimensional Commc'n, Inc. v. OZ Optics, Ltd.,* 148 F. App'x 82, 85 (3d Cir. 2005) (instructing that the Third Circuit has adopted a good cause standard when determining the propriety of a motion to amend after the deadline has elapsed).

The deadline for motions for leave to amend the pleadings in this action expired on August 14, 2015 [Dkt. No. 36] and Defendants filed the present motion on January 13, 2017 [Dkt. No. 143]. The parties do not dispute that Defendants' motion was filed long after the deadline had passed and that Defendants must demonstrate good cause under Rule 16.

Rule 16 of the Federal Rules of Civil Procedure authorizes courts to enter schedules of proceedings. The pretrial scheduling order allows a court to take "judicial control over a case and to schedule dates for completion by the parties of the principal pretrial steps." *Harrison Beverage Co. v. Dribeck Imps., Inc.,* 133 F.R.D. 463, 469 (D.N.J. Oct. 19, 1990) (quoting Fed. R. Civ. P. 16 advisory committee's note (1983 Amendment)); *see also Newton v. A.C. & S., Inc.,* 918 F.2d 1121, 1126 (3d Cir. 1990) (stating the purpose of Rule 16 is to provide for judicial

control over cases, streamline proceedings, maximize efficiency of the court system, and actively manage the timetable of case preparation to expedite speedy and efficient disposition of cases).

A scheduling order must, among other things, "limit the time to join other parties, amend the pleadings, complete discovery, and file motions." Fed. R. Civ. P. 16(b)(3)(A). The requirement of a deadline for amending pleadings in the pretrial scheduling order "assures that at some point . . . the pleadings will be fixed." Fed. R. Civ. P. 16(b) advisory committee's note (1983 Amendment); *see also Harrison,* 133 F.R.D. at 469 ("The careful scheme of reasonable framing and enforcement of scheduling orders for case management would thus be nullified if a party could inject amended pleadings upon a showing of less than good cause after scheduling deadlines have expired."). The burden is on the moving party to show "good cause" for its failure to comply with the applicable scheduling order, and accordingly, for the Court to allow its proposed amended pleading. *Prince v. Aiellos,* No. 09–5429, 2012 WL 1883812, at *6 (D.N.J. May 22, 2012) (quoting *Graham,* 271 F.R.D. at 118); *see also Race Tires Am., Inc. v. Hoosier Racing Tire Corp.,* 614 F.3d 57, 84 (3d Cir. 2010) (affirming the trial court's holding that "Rule 16(b)(4) focuses on the moving party's burden to show due diligence").

Whether "good cause" exists under Rule 16 hinges to a large extent on the diligence, or lack thereof, of the moving party. *GlobespanVirata, Inc. v. Texas Instruments, Inc.,* 2005 WL 1638136, at *3 (D.N.J. July 12, 2005) (quoting *Rent–A–Ctr. v. Mamaroneck Ave. Corp.,* 215 F.R.D. 100, 104 (S.D.N.Y. Apr. 9, 2003)). Put succinctly, "[a]bsent diligence, there is no 'good cause.' " *Chancellor v. Pottsgrove Sch. Dist.,* 501 F.Supp.2d 695, 702 (E.D.Pa. Aug.8, 2007); *see also* Fed. R. Civ. P. 16(b), advisory committee's note (1983 Amendment) ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension.").

When examining a party's diligence and whether "good cause" exists for granting an otherwise untimely motion to amend pleadings, courts typically ascertain whether the movant possessed, or through the exercise of reasonable diligence should have possessed, the knowledge necessary to file the motion to amend before the deadline expired. *See Stallings ex rel. Estate of Stallings v. IBM Corp.,* Civ. No. 08–3121, 2009 WL 2905471, at *16 (D.N.J. Sept. 8, 2009) (denying plaintiffs' motion to amend because they "had sufficient information to state the proposed claims well in advance of the Scheduling Order deadline"); *Kennedy v. City of Newark,*, 2011 WL 2669601, at *2 (D.N.J. July 7, 2011) ("The most common basis for finding a lack of good cause is the party's knowledge of the potential claim before the deadline to amend has passed."). If a movant had the knowledge necessary to file a motion to amend prior to the expiration of the Court's deadline set forth in the scheduling order, and if the movant can provide no satisfactory explanation for the delay, the Court may, in its discretion, deny the motion. *See Dimensional Commc'n.,* 148 F. App'x at 85 (upholding trial court's finding that the movant could not show "good cause" because it was in possession of the facts underlying its proposed counterclaim well before the deadline for amendment).

Defendants have set forth conflicting explanations regarding their failure to file the present motion within the deadline for amending pleadings. In their letter to the Court requesting permission to file the present motion, Defendants claimed that they did not previously possess "the knowledge necessary to file a fraudulent transfer claim" because they "were not provided with copies of the Lease until discovery commenced, and after the deadline to amend pleadings had expired." Dkt. No. 107 at p. 4-5. However, in support of the present motion, Defendants claim that although they "had a copy of the [Lease] at time they filed their Amended Answer and Counterclaim . . . they never understood – until [the] October 11, 2016 . . . settlement conference

– that [Plaintiff] would claim the Property could not be valued at its highest and best use because it was burdened by the [Lease]."[3] Dkt. No. 144 at p. 2.

Defendants' first asserted basis for their failure to move to amend within the deadline, that they were not provided with a copy of the Lease until after the deadline had expired, is thus directly contradicted by Defendants' own filings in this action. Defendants' initial and amended Answer and Counterclaim refer to the specifics of the Lease and set forth Defendants' position regarding the purportedly improper manner by which the Lease was entered to by Plaintiff, making it difficult to accept Defendants' assertion that they were not in possession of the details of the lease at the time they filed their previous pleadings. Furthermore, Defendants' moving Brief in support of their motion states that Defendants "had a copy of the [Lease] at the time they filed their Amended Answer and Counterclaim" [Dkt. No. 144 at p. 2], and the Certification of Yvonne Callas in support of the present motion includes Yvonne's statement that "the [Lease] was in [her] possession before the litigation began . . . ." Dkt. No. 146 at ¶ 10. Based upon Defendants' own statements, it is clear to the Court that Defendants were in possession of the Lease prior to the expiration of the deadline for moving to amend and Defendants' assertion that a lack of knowledge regarding the terms or content of the Lease caused their delay in moving to amend is unavailing.

Defendants' second asserted basis for their failure to move to amend within the deadline, that they were unaware until the October 11, 2016 settlement conference of Plaintiff's position that the existence of the Lease should be taken in account when determining the proper valuation of the Property, is likewise at odds with the previous filings in this matter. Plaintiff's position

---

[3] The Court notes that Defendants' letter to the Court requesting permission to file the present motion does not make any reference to the October 11, 2016 settlement conference or the position allegedly taken by Plaintiff during that conference which Defendants now rely on in support of their motion. *See* Dkt. No. 107. Defendants' November 11, 2017 letter to the Court relies solely on the assertion that Plaintiff "concealed the terms of the Lease." *Id.* at p. 5.

regarding the necessity of considering the Lease in determining the value of the Property can be traced as far back as Plaintiff's Complaint. Included in Count Two of the Complaint is an allegation that the Estate failed to perform its obligations under the Operating Agreement with regard to the Put Notice in part by "asserting in bad faith a grossly inflated valuation of the Property based on false assumptions and analysis and material omissions, including . . . disregard of the present use of the Property and of [the Coffee Business'] long term, renewable leasehold interest in the Property . . . ." Compl. at ¶ 45. This statement in the Complaint clearly evidences Plaintiff's position that the value of the Property asserted by Defendants fails to take into account the effect of the Lease and is therefore "grossly inflated." *Id.*

Plaintiff's statement in the Complaint is the first of several statements of his position regarding the effect of the Lease on the proper valuation of the Property throughout the pendency of this action. Plaintiff has repeatedly reiterated his position in various filings with the Court and in discovery provided to Defendants. Specifically, Plaintiff's expert report, which was served on Defendants in May of 2016 and which Defendants did not rebut, provided five valuations of the Property, three of which included the Lease in the proper determination of the Property's value. *See* Dkt. No. 164, Ex. B. Although Defendants acknowledge that Plaintiff's expert report did in fact assert that the valuation of the Property should include the Lease, they now argue that even after the service of the expert report they still could not "have reasonably assumed" that Plaintiff would argue that the Lease should be considered in the Property's proper valuation. Dkt. No. 170 at p. 6.

Defendants' dubious assertion that they could not have reasonably assumed that Plaintiff would argue that the Lease should be considered in a proper valuation of the Property until the October 11, 2016 settlement conference is squarely at odds not only with the information

presented by Plaintiff in this matter, but also with Defendants' own statements. Defendants' motion for summary judgment, which was filed on July 11, 2016 and subsequently terminated as it was filed without the Court's permission in violation of the Pretrial Scheduling Order, includes a statement by Yvonne Callas that the valuation of the Property asserted by Plaintiff "is absurd and is premised upon [Plaintiff's] self-dealing and dishonesty in executing leases on the Property for his own benefit." *See* Decl. of Yvonne Callas, Dkt. No. 91 at ¶ 27. In addition, the Fed. R. Civ. P. 56.1 Statement submitted as part of Defendants' terminated motion for summary judgment states that the leases executed by Plaintiff represent "example[s] of Plaintiff's attempt to transfer wealth from the LLC to the Coffee Business." Dkt. No. 89 at ¶ 15, n. 1. These statements represent not only an awareness on behalf of Defendants of Plaintiff's purported position that the Lease should factor into the Property's valuation, but also evidence of an assertion by Defendants that Plaintiff had executed the Lease, along with previous leases, in an attempt to improperly "transfer wealth from the LLC to the Coffee Business", which is precisely the claim Defendants' now seek to add based upon information they say they were unaware of prior to the October 11, 2016 settlement conference.

Based on the foregoing, the Court cannot accept Defendants' assertion that they were not aware of Plaintiff's position regarding the effect of the Lease on the value of the Property until the October 11, 2016 settlement conference. A review of the parties' arguments and the record of this case demonstrates that Plaintiff has held this position since the commencement of this action and has repeatedly reiterated his arguments to that end. Accordingly, because Defendants possessed the knowledge necessary to move for the present amendment long before the expiration of the August 14, 2015 deadline and have failed to set forth a satisfactory reason for delaying to move to amend until November 10, 2016, the Court finds that Defendants have failed

to demonstrate good cause for their untimely motion under Rule 16 and their motion to amend is therefore **DENIED**.[4]

### B. Defendants' Request to Compel Plaintiff to Produce "All documents that post-date the filing of the Complaint relating to the operations and financial condition of [the LLC]."

Defendants' presently disputed discovery request seeks from Plaintiff "[a]ll documents that post-date the filing of the Complaint relating to the operations and financial condition of [the LLC]." Dkt. No. 178, Ex. A. Defendants initially served their discovery request on Plaintiff for information relating to the LLC's finances on April 2, 2015. *See* Dkt. No. 138 at p. 4-5. In their initial request, Defendants limited the information sought to the six-year period prior to

---

[4] Although the Court denies Defendants' motion based upon Defendants' failure to demonstrate good cause under Rule 16, the Court notes that even if Defendants had demonstrated good cause, Defendants' motion would be denied under Rule 15.

Pursuant to Federal Rule of Civil Procedure 15(a), "a party may amend its pleading only with the opposing party's written consent or the court's leave" and "[t]he court should freely give leave when justice so requires." The decision to grant leave to amend rests within the sound discretion of the trial court. *Zenith Radio Corp. v. Hazeltine Research Inc.,* 401 U.S. 321, 330 (1970). In determining a motion for leave to amend, Courts consider the following factors: (1) undue delay on the part of the party seeking to amend; (2) bad faith or dilatory motive behind the amendment; (3) repeated failure to cure deficiencies through multiple prior amendments; (4) undue prejudice on the opposing party; and/or (5) futility of the amendment. *See Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 174 (3d Cir. 2010) (quoting *Foman v. Davis*, 371 U.S. 178, 182 (1962)). In addition, "[t]he Third Circuit has consistently emphasized the liberal approach to pleading embodied by Rule 15*." Endo Pharma v. Mylan Techs Inc.*, 2013 U.S. Dist. LEXIS 32931, at *4 (D. Del. Mar. 11, 2013). The Court should only deny leave when these factors "suggest that amendment would be 'unjust'. . . ." *Arthur v. Maersk, Inc.*, 434 F.3d 196, 203 (3d Cir. 2006).

Defendants' motion fails under Rule 15 because Defendants unduly delayed in moving for the present amendment. The Court acknowledges that delay alone is not sufficient to justify denial of leave to amend. *Adams v. Gould Inc.,* 739 F.2d 858, 868 (3d Cir. 1984). However, delay becomes "undue", and thereby creates grounds for denying leave to amend, when it places an unwarranted burden on the court or when the movant has had previous opportunities to amend. *Cureton v. NCAA,* 252 F.3d 267, 273 (3d Cir. 2001) (citing *Adams,* 739 F.2d at 868). Thus, a determination of whether the delay has become undue focuses on the movant's reasons for not amending sooner and balances those reasons against the burden of the delay on the District Court. *Coventry v. U.S. Steel Corp.,* 856 F.2d 514, 520 (3d Cir. 1988).

Here, Defendants' explanations for not moving to amend until nearly two years after the initiation of this action are unavailing and this delay places an unwarranted burden on the Court and on the litigative process. Defendants have had ample time and opportunity to move to amend to state the claim they now seeks to include. The period of discovery in this matter has been extensive and fraught with issues and disputes and to allow the addition of a new claim at this juncture, which Defendants possessed the necessary knowledge to assert long ago, would unreasonably delay the resolution of this matter and impose a significant burden on the Court and the process. Accordingly, were the Court to assess Defendants' motion under Rule 15, the Court would find that the Defendants' delay is undue and therefore results in a denial of leave to amend.

Constantine's death on February 23, 2013. The requested information was produced by Plaintiff. Thereafter, on December 16, 2016, counsel for Defendants contacted counsel for Plaintiff asserting that the initial request served on Plaintiff for information relating to the LLC's finances "imposed a continuing obligation to produce documents" and requesting that Plaintiff produce all documents responsive to the initial demand, specifically including "all documents relating to the LLC's finances through the date of production." Dkt. No. 137 at Ex. A. Plaintiff did not provide any additional documents in response to Defendants' request.

Defendants submitted a letter to the Court, dated January 9, 2017, stating that Plaintiff had failed to respond to their request for additional documents. [Dkt. No. 137]. Plaintiff filed a response to Defendants' letter on January 12, 2017, claiming that Defendants' request was specifically limited to the six-year period prior to Constantine's death and that all relevant documents for that period had already been provided to Defendants [Dkt. No. 138]. The Court addressed Defendants' request during a telephone conference held on the record on January 13, 2017. *See* Dkt. No. 180, Ex. A. During the conference, Defendants argued that any information related the finances of LLC from the date the Complaint was filed to the present is relevant to Defendants' claim for an accounting. Defendants also contended that although their original request for documents related to the LLC's finances was limited to the six-year period prior to Constantine's death on February 23, 2013, that request was a "continuing demand up until the time of trial" for information relating to the LLC's finances. Dkt. No. 180, Ex. A at 22:11-12. In opposition to Defendants' request, Plaintiff argued that Defendants' document request was expressly limited to the six-year period prior to Constantine's death and that any information relating to the LLC's finances after February 23, 2013 is irrelevant. The Court did not rule on Defendants' request but instead instructed that Defendants may "serve one discrete document

request" for the disputed documents and that any issues relating to Defendants' renewed request should be brought to the Court's attention. *Id.* at 25:17-18.

On January 13, 2017, Defendants served Plaintiff with a request for:

> All documents that post-date the filing of the Complaint relating to the operations and financial condition of [the LLC] including but not limited to: rent paid by [the Coffee Business] to [the LLC]; the receipt and disbursement of funds by [the LLC]; local, state and federal tax returns filed by [the LLC]; the general ledger of [the LLC]; all quarterly, annual, or other financial reports, statements, income statements, cash flow statements, and balance sheets of [the LLC], whether consolidated or unconsolidated, audited or unaudited; minutes or memoranda of meetings of [the LLC] or any of its members, officers, managers, or directors concerning the financial condition of [the LLC]; all amounts due to the Estate as the owner of 40% of the LLC; all other true and full information regarding the status of [the LLC's] financial condition, to the extent not covered above.

Dkt. No. 178, Ex. A. Defendants' filed a letter, dated March 13, 2017, informing the Court that Plaintiff had indeed objected to Defendants' renewed request for post-February 23, 2013 documents relating to the LLC's finances. *See* Dkt. No. 178. In their letter, Defendants contend that Plaintiff's objections to Defendants' requests are meritless largely because the Court "specifically authorized" Defendants' request during the January 13, 2017 conference. *Id.* at 1, 2. Plaintiff filed a responsive letter on March 21, 2017, setting forth his position that any documents relating to the LLC's finances after February 23, 2013 are irrelevant and not proportional to the needs of this case. *See* Dkt. No. 180. The Court conducted a telephone conference on the record with the parties on March 27, 2017 to address the present dispute. *See* Dkt. No. 184. The Court did not issue a ruling as to the presently disputed documents during the March 27, 2017 conference.

Pursuant to Federal Rule of Civil Procedure 26(b)(1):

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of

> the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

Rule 26 is to be construed liberally in favor of disclosure, as relevance is a broader inquiry at the discovery stage than at the trial stage. *Tele–Radio Sys. Ltd. v. De Forest Elecs., Inc.,* 92 F.R.D. 371, 375 (D.N.J. 1981). While relevant information need not be admissible at trial in order to grant disclosure, the burden remains on the party seeking discovery to "show that the information sought is relevant to the subject matter of the action and may lead to admissible evidence." *Caver v. City of Trenton*, 192 F.R.D. 154, 159 (D.N.J. 2000). Upon a finding of good cause, a court may order discovery of any matter relevant to a party's claims, defenses or the subject matter involved in the action "Although the scope of discovery under the Federal Rules is unquestionably broad, this right is not unlimited and may be circumscribed." *Bayer AG v. Betachem, Inc.,* 173 F.3d 188, 191 (3d Cir. 1999).

As an initial matter, the Court notes that contrary to Defendants' contention, at no time during the January 13, 2017 telephone conference with the parties did the Court issue any ruling as to the merits of Defendants' presently disputed request or in any way indicate to the parties that Plaintiff would be ordered to produce responsive documents. The Court's instruction allowing Defendants to serve "one discrete document request, if [they] feel necessary" was meant to allow Defendants to attempt to specify the universe of documents sought and to provide the parties with the opportunity to either work to resolve any remaining disputes or to present their respective arguments regarding the production of the requested documents to the Court. Furthermore, because Defendants had not actually served Plaintiff with a formal document

request, the dispute was not yet ripe for decision. The parties were unable to resolve this issue and now the Court must issue a ruling on Defendants' contested discovery request.

While Plaintiff asserts that any information regarding the finances of the LLC after February 23, 2013 is irrelevant to the claims in this action because the central dispute in this matter centers on the value of the Estate on the date of Constantine's death, Defendants claim that the requested information is relevant to their claim for breach of fiduciary duty, their claim for an accounting, and their member oppression claim. The Court will discuss the relevance of the requested information to these claims in turn.

First, Defendants' claim for breach of fiduciary duty asserts that William, as the managing and majority member of the LLC, breached his fiduciary duty to the Estate primarily through a purported failure by the Coffee Business to pay the rent due to the LLC and by seeking to purchase the Estate's interest in the LLC "at a depressed value." Dkt. No. 17 at ¶ 61-67. The value of the Estate's interest in the LLC is undisputedly determined by its value as of the date of Constantine's death, and accordingly, the LLC's financial information after February 23, 2013 is irrelevant to Defendants' claim in that respect. However, as to Defendants' allegations in its claim for breach of fiduciary duty which assert a failure by the Coffee Business to pay rent to the LLC even after Constantine's death, the Court finds that information regarding the rent paid by the Coffee Business to the LLC post-February 23, 2013 is relevant and should be provided to Defendants. Accordingly, Plaintiff shall provide Defendants with documents showing any and all rent paid to the LLC by the Coffee Business subsequent to the filing of the Complaint.

Next, the Court addresses the relevancy of the requested information to Defendants' claim for an accounting. Defendants' accounting claim seeks "a full accounting with respect to Constantine Callas' membership interest in [the LLC]." Dkt. No. 17 at ¶ 77. Plaintiff argues that

the requested information is irrelevant to Defendants' accounting claim because as a result of Defendants' exercise of the Put Notice, the only relevant inquiry in determining the value of Constantine's interest in the LLC involves information up until the date of Constantine's death. Defendants have characterized their accounting claim as seeking "[a]n accounting of William's treatment of Constantine Callas during his life-time as a 40% owner of the LLC." Dkt. No. 76 at p. 3. Although Defendants now assert that the LLC's financial information post-February 23, 2013 bears substantial relevance to their accounting claim and should therefore be produced, it appears to the Court that Defendants' accounting claim is primarily aimed at the LLC's dealings during Constantine's lifetime. Accordingly, although the Court acknowledges that the LLC's post-February 23, 2013 financial information may bear some minimal relevance to Defendants' accounting claim, the Court finds that any relevance in negligible and not proportional to the needs of this case.

Finally, the Court addresses the relevance of the requested information to Defendants' member oppression claim. Defendants claim that the information sought is relevant to their member oppression claim because it goes to Defendants' allegation that they did not receive distributions to which they are entitled. *See* Dkt. No. 184 at 22:15-21. In opposition, Plaintiff contends that under the Operating Agreement, no member of the LLC is entitled to distributions. During the March 27, 2017 telephone conference which addressed this issue, Plaintiff, while maintaining his position that Defendants are not entitled to distributions under the Operating Agreement, agreed to submit a certification stating that "at no time during the history of [the] LLC from 1996 forward to the present, did [the LLC] ever, in fact, make any distributions." Dkt. No. 184 at 29:14-19. The Court finds that a certification by Plaintiff to this effect will resolve this issue and provide Defendants with the information to which they are entitled. Accordingly,

Plaintiff shall provide Defendants with a certification regarding any distributions made by the LLC.

Based on the foregoing, Defendants' motion to compel the production of documents relating to the LLC's finances which post-date the filing of the Complaint [Dkt. No. 178] is **GRANTED in part and DENIED in part**. Defendants' motion is **GRANTED** to the extent that Plaintiff shall provide Defendants with: (1) documents showing any and all rent paid to the LLC by the Coffee Business subsequent to the filing of the Complaint; and (2) a certification stating that no distributions were made by the LLC. Defendants' motion is **DENIED** as to the remainder of the information sought.

### III. CONCLUSION AND ORDER

The Court having considered the papers submitted pursuant to Fed. R. Civ. P. 78, and for the reasons set forth above;

**IT IS** on this 11th day of August, 2017,

**ORDERED** that Defendants' motion for leave to file a Second Amended Answer and Counterclaim [Dkt. No. 143] is **DENIED**; and it is further

**ORDERED** that Defendants' application to compel the production of documents related to the financial condition of the LLC which post-date the filing of the Complaint [Dkt. No. 178] is **GRANTED in part and DENIED in part**; and it is further

**ORDERED** that within **fourteen (14) days** from the date of this Order, Plaintiff shall provide Defendants with documents showing any and all rent paid to the LLC by the Coffee Business subsequent to the filing of the Complaint; and it is further

**ORDERED** that within **fourteen (14) days** from the date of this Order, Plaintiff shall provide to Defendants a certification regarding any distributions made by the LLC from its formation to the present.

      s/ James B. Clark, III
**JAMES B. CLARK, III**
**United States Magistrate Judge**