# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

<u>Not for Publication</u>

| | |
|---|---|
| WILLIAM DEAN CALLAS, | |
| *Plaintiff,* | |
| v. | Civil Action No. 14-7486 |
| PENNY CALLAS, GEORGE CALLAS, AND YVONNE CALLAS IN THEIR CAPACITIES AS THE CO-EXECUTORS OF THE ESTATE OF CONSTANTINE CALLAS, | <u>OPINION</u> |
| *Defendants.* | |

**<u>John Michael Vazquez, U.S.D.J.</u>**

This case arises out of a dispute between Plaintiff and the executors of his father's estate, his siblings.  Currently pending before the Court are the parties' motions for summary judgment, D.E. 309, D.E. 301, and Defendants' motion to dismiss pursuant to Fed. R. Civ. P 12(b)(1) and Fed. R. Civ. P 12(b)(7), D.E. 307.  The motions were decided without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1.  The Court has considered the parties' submissions[1] and, for the reasons discussed below, the motions are denied.

---

[1] Plaintiff's brief in support of his motion for summary judgment is referred to as "Pl. Br.," D.E. 309-1; Defendants' opposition is referred to as "Def. Opp." D.E. 319; Plaintiff's reply in further support of his motion for summary judgment is referred to as "Pl. Reply," D.E. 335; Defendants' brief in support of their motion for summary judgment is referred to as "Def. Br.," D.E. 302; Plaintiff's opposition is referred to as "Pl. Opp.," D.E. 324; Defendants' reply in further support of their motion for summary judgment is referred to as "Def. Reply," D.E. 333; Defendants' brief in support of their motion to dismiss is referred to as "MTD Br.," D.E. 308; Plaintiff's brief in opposition is referred to as "MTD Opp.," D.E. 320; Defendants' reply brief in support of their motion to dismiss is referred to as "MTD Reply,"  D.E. 334.

I.        **BACKGROUND**[2]

The Court included extensive factual backgrounds in its prior opinions in this matter, which are incorporated by reference here.  *See e.g.*, D.E. 181.  The Court highlights the following factual assertions as relevant to the current motions.

Plaintiff brought this action against Defendants, the executors of the estate of his late father (the "Estate"), Constantine Callas ("Constantine"), to settle a dispute over the value of Constantine's ownership interest in a real estate holding company, Coffee Associates LLC (the "LLC").  *See generally* Compl.  Plaintiff and his father were the only members of the LLC, which is governed by an operating agreement ("Operating Agreement" or "the Agreement").   Def. RSOMF ¶ 9.  The LLC's primary asset is real estate known as 178 Old River Road (f/k/a/ River Road) Edgewater, New Jersey 07020 (the "Property").  *Id*. ¶¶ 5, 10, and 11.  A company called Coffee Associates, Inc. ("Coffee Associates") currently leases the Property from the LLC "as an industrial site to roast, sell, and distribute coffee."  Def. RSOMF ¶¶ 1, 12.  Plaintiff is the sole owner of Coffee Associates.  Pl. RSOMF ¶ 11 (admitting that Plaintiff became "the sole owner of the Coffee Business[.]"); *see also* D.E. 311 at 2, ¶ 5 (Plaintiff testifying that "[s]ince 2002, I have been the sole owner of Coffee Associates.").  Before his passing, Constantine held a 40% interest in the LLC, and Plaintiff held a 60% interest.  *Id*. ¶ 9; Pl. RSOMF ¶ 8.

---

[2] The facts are derived from Plaintiff's Complaint ("Compl."), D.E. 1; Defendant's Amended Answer, Separate Defenses, Counterclaim and Jury Demand ("AA"), D.E. 17; Plaintiffs' Statement of Undisputed Material Facts ("Pl. SOMF"), D.E. 247-1, D.E. 309-2; Defendants' Responsive Statement of Material Facts in Support of its Opposition to Plaintiffs' Motion For Summary Judgment ("Def. RSOMF"), D.E. 248-1, D.E. 310-3; Defendants' Statement of Material Facts ("Def. SOMF"), D.E. 246-1, D.E. 303, D.E. 319-6; and Plaintiffs' Response to Defendant's Statement of Material Facts ("Pl. RSOMF"), D.E. 249-1, D.E. 323.

The Operating Agreement contains provisions dealing with death of a member. Specifically, Section 14.2 of the Operating Agreement provides, in part, that "for a period of one (1) year following the Date of Disability or Death, [a] Disabled Person or Deceased Person has the right to sell to each member the Interest owned by the Disabled Member or Deceased Member on the terms and conditions set forth in this agreement."  D.E. 21-2 at 27[3].  The Operating Agreement specifies that this right "shall be exercised, if at all, by the giving of a written notice (the "Put Notice") by such a Disabled Member or the personal representative of the Deceased Member at any time from and after the Date of Disability or Death through one (1) year from the Date of Disability or Death."  D.E. 21-2 at 27[4]; Def. RSOMF ¶ 20.  Once a Put Notice is issued "such member (or his Personal Representative) shall be obligated to sell, and the other Members shall be obligated to buy all, and not less than all, of the Interest of such Deceased Member or Disabled Member."  D.E. 21-2 at 27; Def. RSOMF ¶ 20.

The Operating Agreement further provides for the calculation of the value of an interest in the LLC sold pursuant to a Put Notice:

> [T]he purchase price for each LLC interest shall be eighty (80%) percent of the base purchase price as calculated in Section 14.4 of this Agreement using an Applicable Valuation Date as of the Date of Disability or Death, and such purchase shall be effected in the manner and upon the terms and conditions set forth in Section 14.5 of this Agreement.

---

[3] Unless otherwise stated, page numbers for exhibits are assigned based on the page numbers generated by the Court's electronic filing system.

[4] Neither party appears to contest the accuracy or authenticity of the "Operating Agreement of Coffee Associates, LLC" attached as Exhibit A to the February 25, 2015, Declaration of Joel M. Silverstein at D.E. 21-2.  Indeed, Defendants appear to have submitted the Operating Agreement as Exhibit 8 to Declaration of Yvonne Callas, *see* D.E. 305 at 7, ¶ 25, D.E. 305-8, in support of their motion for summary judgment.  The same Operating Agreement is also submitted as Exhibit 2 to the Certification of William Dean Callas, D.E. 311-2.  Accordingly, there is no dispute that the terms of the LLC's Operating Agreement are accurately reflected in the "Operating Agreement of Coffee Associates, LLC" located at D.E. 21-2 and D.E. 311-2.

D.E. 21-2 at 27; Def. RSOMF ¶ 21.   Section 1.3 of the Operating Agreement defines "Applicable Valuation Date" to mean "either the Date of Disability or Death."   D.E. 21-2 at 5.   "Date of Disability or Death" means "the date on which there is a Deceased Member or Disabled Person." D.E. 21-2 at 7.   "Deceased Member" means "the death of a Member during the term of this Agreement."  D.E. 21-2 at 7.   Section 14.4 of the Operating Agreement provides the method for calculating the "Base Purchase Price": "[t]he base purchase price for the Interest being sold by such Member selling all of his Interest shall be the Valuation Purchase Price, multiplied by the LLC percentage interest being sold."  D.E. 21-2 at 29; Def. RSOMF ¶ 22.  "Valuation Purchase Price" means the following:

> "[T]he purchase price for a LLC interest as of the Applicable Valuation Date equal to the sum of (i) and (ii) and (iii) below:
>
> (i) The Appraised Value as of the Applicable Valuation Date of all real property interest owned by the LLC, whether such ownership interest is direct or indirect through a partnership or other entity; plus
>
> (ii) The agreed upon fair market value as of the Applicable Valuation Date of all other tangible and/or intangible personal property (including stocks, bonds and other financial instruments) owned by the LLC; less
>
> (iii) The amount of all liabilities of the LLC, and all liabilities secured by property owned by the LLC, whether such ownership interest is direct or indirect through a partnership or other entity, to the extent not already taken into account above.

D.E. 21-2 at 10; Def. RSOMF ¶ 23.

Constantine passed away on February 23, 2013.  Def. RSOMF ¶ 16.  Penny Callas, George Callas, and Yvonne Callas – Plaintiff's siblings and Constantine's children – are the co-executors of the Estate.  Def. RSOMF ¶ 17; Pl. RSOMF ¶ 3 (admitting that "George Callas, Yvonne Callas, and Penny Callas are all co-executors of the Estate and, together with Plaintiff, are the children of

Constantine Callas."). On February 1, 2014, the Estate sent Plaintiff a Put Notice as defined in the Operating Agreement. Def. RSOMF ¶ 20. There is no dispute that the "Applicable Valuation Date," as defined in the Operating Agreement, is "February 23, 2013: the Date of Constantine's Death." Def. RSOMF ¶ 21. Plaintiff has sent the executors three appraisals for the Property, with valuations between $2,100,000.00 to $2,700,000.00. Def. RSOMF ¶¶ 18, 25, and 26. Plaintiff proposed to use the $2,700,000.00 appraisal for purposes of calculating the purchase price of Constantine's LLC interest. Def. RSOMF ¶ 27. However, the "parties disagree factually . . . as to the Appraised Value of the Property." Def. RSOMF ¶ 34.

Plaintiff filed his Complaint on December 2, 2014, alleging three causes of action (1) Anticipatory Breach and Repudiation of the Operating Agreement; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (3) Specific Performance. D.E. 1; Def. RSOMF ¶ 29. Defendants filed their Amended Answer, Separate Defenses, Counterclaims, and Jury Demand on January 27, 2015. *See generally* AA; Def. RSOMF ¶ 31. Defendants' Counterclaims similarly assert claims for breach of contract, breach of the implied warranty and good faith and fair dealing, and for specific performance. AA ¶¶ 47-54, 55-60, and 69-73. Defendants also assert Counterclaims for breach of fiduciary duty, *id*. ¶¶ 61-68, accounting, *id*. ¶¶ 74-77, and member oppression, *id*. ¶¶ 78-80. Defendants' Counterclaims generally assert that Plaintiff, acting for both the LLC and Coffee Associates, entered into new leases for the Property that unfairly benefited Coffee Associates, *id*. ¶¶ 14-22, that Plaintiff, acting for Coffee Associates, failed to pay rent due the LLC, *id*. ¶ 65, and that Plaintiff stopped making distributions from the LLC upon Constantine's passing, *id*. ¶¶ 24-25.

## II.        PROCEDURAL HISTORY

On June 21, 2019, Defendants requested leave to file a motion for summary judgment, accompanied by their statement of material facts.  D.E. 246, D.E. 246-1.  Plaintiff also filed a request for leave to file for summary judgment.  D.E. 247, D.E. 247-1.  Both parties filed letters in opposition and submitted their responsive statement of material facts.  D.E. 248, D.E. 249.  Plaintiff sought leave to file for summary judgment as to all his affirmative claims and for summary judgment as to Counts One, Two, Three, Four, Five, and Six of Defendants' Counterclaims.  D.E. 247.  Defendants sought leave to file for summary judgment as to Counts One, Two, Three, and Six of their Counterclaims and for summary judgment against Counts One, Two, and Three of Plaintiff's Complaint.  D.E. 246.  Defendants also requested leave to file a "motion to dismiss for lack of subject-matter jurisdiction pursuant to Fed. R. Civ. P. 12(b)(1) . . . and/or to dismiss for failure to join a party under Rule 19 pursuant to Fed. R. Civ. P. 12(b)(7)."  *Id*.  The Court granted the parties' leave to file their respective motions.  D.E. 292.  The present motions followed.[5]

## III.       STANDARD OF REVIEW

### A.        Fed R. Civ. P. 12(b)(1)

In deciding a Fed R. Civ. P. 12(b)(1) motion as to lack of subject-matter jurisdiction, a court must first determine whether the party presents a facial or factual attack because the distinction determines how the pleading is reviewed.  A facial attack "contests the sufficiency of the complaint because of a defect on its face," whereas a factual attack "asserts that the factual underpinnings of the basis for jurisdiction fails to comport with the jurisdictional prerequisites."

---

[5] In addition, on April 9, 2021, Defendants filed a letter requesting the Court to strike certain exhibits attached the certification Plaintiff filed with his Reply brief in further support of his motion for summary judgment.   D.E. 340.   Plaintiff filed opposition, D.E. 342, to which Defendants replied, D.E. 343.

*Elbeco Inc. v. Nat'l Ret. Fund*, 128 F. Supp. 3d 849, 854 (E.D. Pa. 2015) (quoting *Moore v. Angie's List, Inc.*, 118 F. Supp. 3d 802, 806 (E.D. Pa. 2015)).  Where a 12(b)(1) motion attacks the complaint on its face and does not contest the facts alleged by the non-moving party, the 12(b)(1) motion is treated "like a 12(b)(6) motion" and the Court must "consider the allegations of the complaint as true." *T.L. by & through Latisha G. v. Pennsylvania Leadership Charter Sch.*, 224 F. Supp. 3d 421, 429 (E.D. Pa. 2016) (citing *Hartig Drug Co. Inc. v. Senju Pharm. Co.*, 836 F.3d 261, 268 (3d Cir. 2016)).  Factual attacks, in contrast, argue that subject-matter jurisdiction is improper "because the facts of the case . . . do not support the asserted jurisdiction."  *Evanston*, 2019 WL 1916203, at *2 (quoting *Const. Party of Pennsylvania v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014)).  As to factual attacks, courts are permitted "to weigh and consider evidence 'outside the pleadings' to decide whether subject matter jurisdiction is proper."  *Id*.  Regardless of whether the attack is facial or factual, "the Plaintiff has the burden to prove that the Court has jurisdiction." *Bd. of Trs. of Trucking Emps of N. Jersey Welfare Fund, Inc. v. Caliber Auto Transfer, Inc.*, No. 09-6447, 2010 WL 2521091, at *8 (D.N.J. June 11, 2010) (quoting *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006)).

Here, Defendants' arguments primarily rely on matters outside the Complaint.  *See generally* D.E. 308.  Accordingly, the Court construes Defendants' motion as a factual attack.  As a result, the Court will consider and weigh evidence beyond the pleadings to determine whether it has jurisdiction.  *Gould Elecs. Inc. v. United States*, 220 F.3d 169, 178 (3d Cir. 2000), holding modified by *Simon v. United States*, 341 F.3d 193 (3d Cir. 2003).

### B.      Fed R. Civ. P. 12(b)(7)

Under Fed. R. Civ. P. 12(b)(7), a court may dismiss an action for "failure to join a party under Rule 19."  Fed. R. Civ. P. 19 "sets out the circumstances under which it is necessary to join an absent party and, if joinder of that party is not feasible, the factors for determining whether the

absent party is indispensable to the action." *US Tech Sols., Inc. v. eTeam, Inc.*, No. CV 17-1107-SDW-LDW, 2017 WL 3535022, at *2 (D.N.J. Aug. 16, 2017).  "[I]n pursuing a Rule 12(b)(7) motion to dismiss, the moving party bears the burden of showing that the absent party is both necessary and indispensable under Rule 19." *Id.*  (citing *Disabled in Action of Pennsylvania v. Se. Pennsylvania Transp. Auth.*, 635 F.3d 87, 97 (3d Cir. 2011)).  "In considering a motion under Rule 12(b)(7), the court must accept the factual allegations in the complaint as true and view those allegations in the light most favorable to the non-moving party." *Id.*  However, "when making a determination pursuant to Federal Rule of Civil Procedure 19, a court may consider evidence outside of the pleadings." *M&B IP Analysts, LLC v. Cortica-US, Inc.*, No. CV190429ESSCM, 2020 WL 3411027, at *2 (D.N.J. June 22, 2020) (citing *Mediterranean Shipping Co. (USA) Inc. v. Shandex Corp.*, No. CV 16-2595-CCC-JBC, 2017 WL 1129593, at *2 (D.N.J. Mar. 23, 2017)).

### C.      Summary Judgment

A moving party is entitled to summary judgment where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  A fact in dispute is material when it "might affect the outcome of the suit under the governing law" and is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Disputes over irrelevant or unnecessary facts will not preclude granting a motion for summary judgment. *Id.*  "In considering a motion for summary judgment, a district court may not make credibility determinations or engage in any weighing of the evidence; instead, the nonmoving party's evidence 'is to be believed and all justifiable inferences are to be drawn in his favor.'" *Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (quoting *Anderson*, 477 U.S. at 255)).  A court's role in deciding a motion for summary judgment is not to evaluate the evidence

and decide the truth of the matter but rather "to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249.

A party moving for summary judgment has the initial burden of showing the basis for its motion and must demonstrate that there is an absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). After the moving party adequately supports its motion, the burden shifts to the nonmoving party to "go beyond the pleadings and by her own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (internal quotation marks omitted). To withstand a properly supported motion for summary judgment, the nonmoving party must identify specific facts and affirmative evidence that contradict the moving party. *Anderson*, 477 U.S. at 250. "[I]f the non-movant's evidence is merely 'colorable' or is 'not significantly probative,' the court may grant summary judgment." *Messa v. Omaha Prop. & Cas. Ins. Co.*, 122 F. Supp. 2d 523, 528 (D.N.J. 2000) (quoting *Anderson*, 477 U.S. at 249-50)).

Ultimately, there is "no genuine issue as to any material fact" if a party "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Celotex Corp.*, 477 U.S. at 322. "If reasonable minds could differ as to the import of the evidence," however, summary judgment is not appropriate. *See Anderson*, 477 U.S. at 250-51.

IV.    **DISCUSSION**

A.    **Motion to Dismiss**

Defendants argue in passing that the Complaint's allegations as to diversity are insufficient. MTD Br. at 10. 28 U.S.C. § 1332(a)(1) provides in part that "[t]he district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between-- (1) citizens of different States[.]" In

addition, "the legal representative of the estate of a decedent shall be deemed to be a citizen only of the same State as the decedent[.]" 28 U.S.C. § 1332(c)(2).  Here, the Complaint alleges Plaintiff is a New Jersey resident and that all three Defendants are executors of the Estate and that Constantine, the decedent, "was a Florida resident at the time of his death on February 23, 2013." Compl. ¶¶ 2-4.  Notably, Defendants merely point to a purported pleading deficiency but do not claim that Constantine was a citizen of a state other than Florida at the time of his passing.  The relevant inquiry is whether Plaintiff and Constantine were, in fact, citizens of different states.  As to that question, Defendants' answer admitted Plaintiff's allegation that Plaintiff and Defendants were citizens of different states under 28 U.S.C. § 1332(c)(2).  AA ¶ 5.  Defendants further admit in their motion that "Constantine was a Florida domiciliary at the time of his death, and so the Estate and its executors have a Florida domicile for diversity purposes."  MTD Br. at 15.  And Plaintiff submitted a declaration that establishes his New Jersey citizenship.  D.E. 320-7 at 1, ¶¶ 2-3.  Plaintiff met his burden in showing that diversity exists.

Defendants next argue the case should be dismissed because the Estate is a member of the LLC and that the LLC is a necessary party to this case under Fed. R. Civ. P. 19 whose joinder – either as a Plaintiff or Defendant – would destroy diversity.  *See* Br. at 13.  Plaintiff responds that (1) the Estate is not a member of the LLC and therefore its joinder, if necessary, would not break diversity; and (2) the LLC is not a necessary or indispensable party under Rule 19.  MTD Opp. at 9-14.

In relevant part, Rule 19 provides as follows:

> (a) Persons Required to Be Joined if Feasible.
>
> > (1) *Required Party.* A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:

(A) in that person's absence, the court cannot accord complete relief among existing parties; or

(B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i) as a practical matter impair or impede the person's ability to protect the interest; or

(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

(2) *Joinder by Court Order.* If a person has not been joined as required, the court must order that the person be made a party. A person who refuses to join as a plaintiff may be made either a defendant or, in a proper case, an involuntary plaintiff.

(3) *Venue.* If a joined party objects to venue and the joinder would make venue improper, the court must dismiss that party.

(b) When Joinder Is Not Feasible. If a person who is required to be joined if feasible cannot be joined, the court must determine whether, in equity and good conscience, the action should proceed among the existing parties or should be dismissed. The factors for the court to consider include:

(1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;

(2) the extent to which any prejudice could be lessened or avoided by:

(A) protective provisions in the judgment;

(B) shaping the relief; or

(C) other measures;

(3) whether a judgment rendered in the person's absence would be adequate; and

(4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

Fed. R. Civ. P. 19.  The Court first "must determine whether the absent [party] should be joined as [a] 'necessary' part[y] under Rule 19(a)." *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d 306, 312 (3d Cir. 2007).  If the party should be joined "but [its] joinder is not feasible

inasmuch as it would defeat diversity of citizenship" the Court "next must determine whether the absent part[y] [is] 'indispensable' under Rule 19(b)." *Id*. If the party is deemed indispensable under Rule 19(b) "the action cannot go forward." *Id*.; *see also Sun Chem. Corp. v. Am. Home Assurance Co.*, No. CV 20-6252 (SRC), 2020 WL 5406171, at *5 (D.N.J. Sept. 9, 2020) ("If joinder is required under Rule 19(a) but is not feasible, for instance because joinder would destroy diversity jurisdiction, the court must determine whether the non-joined party is indispensable under Rule 19(b)." (citing *Gen. Refractories Co. v. First State Ins. Co.*, 500 F.3d at 312)).

Defendants rely on *Weber v. King*, 110 F. Supp. 2d 124, 125 (E.D.N.Y. 2000), *Prader v. Sci. Dynamics Corp.*, Civil Action No. 99-5303 (JBS), 2000 U.S. Dist. LEXIS 18666, at *1 (D.N.J. Dec. 19, 2000), *Hopkins v. Duckett*, No. CIV A 02-5589 JCL, 2006 WL 3373784, at *8 (D.N.J. Nov. 21, 2006) and *Trademark Retail, Inc. v. Apple Glen Invs., LP*, 196 F.R.D. 535, 542 (N.D. Ind. 2000). Defendants claim these cases hold that an LLC is routinely found to be a necessary party where the "members of a limited liability company are in conflict" and where "claims by a member against a member arise out of the operating agreement." MTD Br. at 1, 16.

The Court disagrees. In the cited cases, the courts found the LLCs to be necessary based on an individualized analysis of the relevant Rule 19(a)(1) factors. In *Weber*, 110 F. Supp. 2d at 128, the court reasoned that the plaintiffs'– members of a non-party LLC – request to use the LLC's assets to pay down their personal debts over the objection of another member implicated the interests of the LLC which could not be adequately represented due to the conflict among the members. *Id*. The court in *Trademark Retail, Inc.*, 196 F.R.D. at 540, found the non-joined LLC to be a necessary party because the plaintiff's complaint alleged the defendant had caused harm to the LLC and had left the LLC without a manager. *Id*. *See also Prader*, Civil Action No. 99-5303 (JBS), 2000 U.S. Dist. LEXIS 18666, at *1 (analyzing Rule 19(a)(1) factors and finding

LLC to be necessary party in part because "the contract at issue is undisputedly between [the LLC] and [the Defendant]."); *Hopkins*, No. CIV A 02-5589 JCL, 2006 WL 3373784, at *8. Other courts have rejected Rule 19 motions to join LLCs. Indeed, a court in this district concluded that an LLC was not a necessary party in a dispute between its members over the sale of the defendant's interest in the LLC. *Foster Owners Co. LLC v. Farrell*, No. CIV. A. 14-5120 FSH, 2015 WL 778758, at *5 (D.N.J. Feb. 24, 2015) (finding the LLC was not a necessary party under Rule 19(a)(1)(B)(i) where the relevant agreements obligated the defendant to sell his interest in the LLC to a third party.).

The cases make clear that the Court must conduct the Rule 19 analysis on a case-by-case basis. *See e.g.*, *Trademark Retail, Inc.*, 196 F.R.D. at 539 ("If anything can be gleaned from the foregoing, it is that Rule 19 requires examining the specifics to determine whether a party is in fact necessary."). But Defendants makes no attempt to analyze the relevant standards. At no point in the briefing do Defendants explain which subsection of Rule 19(a) renders the LLC a necessary party. Instead, Defendants spend most of their brief reciting the factual allegations in the Complaint and AA and make no effort to discuss the relevant legal factors. Defendants also make blanket statements that the case law requires the LLC's joinder. As discussed, the cited authority does not support Defendants' wholesale position and Defendants have otherwise failed to conduct any other, non-conclusory analysis as to the Rule 19(a) factors in arguing the LLC is a necessary party. Accordingly, the Court finds that Defendants have not met their burden to show that the LLC is a necessary party.

Defendants' Rule 19 motion also miscomprehends the appropriate standard, ignoring the required analysis under Rule 19(b). *See Gen. Refractories Co.*, 500 F.3d 312. Defendants argue "[t]he LLC must be joined and, since that cannot be done without destroying diversity, the action

must be dismissed."  MTD Br. at 8; *see also id*. at 17 ("The LLC is a necessary party to this litigation and its joinder destroys diversity.  Thus, this Court lacks subject matter jurisdiction."). In essence, Defendants contend that a finding that a non-diverse party is necessary requires dismissal of the action.  This is incorrect.   Assuming the LLC is necessary and that "[its] joinder is not feasible inasmuch as it would defeat diversity of citizenship" Defendants were obligated to conduct a Rule 19(b) analysis to show why the LLC is indispensable.  *See Gen. Refractories Co.,* 500 F.3d 312.  Defendants made no such showing.  For that additional reason, Defendants' motion is denied.  *US Tech Sols., Inc.*, No. CV 17-1107-SDW-LDW, 2017 WL 3535022, at *2 (holding that "[e]ven if th[e] Court found that the Absent Parties were required parties under Rule 19(a), dismissal of Plaintiffs' Amended Complaint would be inappropriate" because "[d]efendants make only a conclusory argument regarding the Rule 19(b) requirements.").

### B.    Plaintiff's Motion for Summary Judgment

Plaintiff seeks summary judgment as to all his affirmative claims and as to all of Defendants' Counterclaims.  D.E. *See generally* D.E. 309-1.  The Court reviews each argument in turn.

### 1.   Plaintiff's Motion as to Counts One, Two, and Three of the Complaint

Plaintiff seeks summary judgment on Count One, anticipatory breach and repudiation of the Operating Agreement; Count Two, breach of the implied covenant of good faith and fair dealing; and Count Three, specific performance.  The Court addresses Defendants' arguments first. In their opposition, Defendants' request to supplement their "Rule 56.1 Statement to add fact testimony from Calisto Bertin, an engineer as to the town of Edgewater's actions to promote high-rise residential development of the area surrounding the Property as well as the number of units

that the existing zoning itself allowed as of 2013."[6]  *Id*.  The Court previously considered, and denied, this same request months ago.[7]  Specifically, on November 12, 2020, Defendants filed a letter requesting "permission to supplement their Statement with fact testimony of Calisto Bertin." D.E. 294.  The Court denied this request.  The Court reasoned that Defendants' failure to disclose Mr. Bertin "more than six years after this case began and two years after the close of fact discovery" violated Fed. R. Civ. P. 26(a)(1)(A)(i) and (e)(1).  D.E. 300 at 2, n. 1.  The Court further noted this late disclosure would prejudice Plaintiff and that Mr. Bertin's testimony likely constituted expert testimony.  *Id*. at 3, n. 2.  The Court also found that Defendants had failed to show good cause under Fed. R. Civ. P 16(b)(4) to alter the scheduling order.  *Id*. at 3.  Defendants have not moved to reconsider that order.  Defendants' current request is rejected for the same reasons previously stated by the Court.[8]  The Court denies Plaintiffs' request to consider Mr. Bertin's testimony in opposition to Plaintiff's motion for summary judgment.

---

[6] Without leave of Court, Defendants submitted a "Supplemental Statement of Material Facts Not In Dispute," D.E. 319-7, a "Supplemental Declaration of Yvonne Callas," D.E. 319-1, and other exhibits, D.E. 319-2 – D.E. 319-6 not discussed in their initial Statement of Material Facts or Responsive Statement of Material Facts.  These submissions violate this Court's Order that the parties "shall refer to their [original] statement of undisputed material facts" and that "[t]he Court will disregard any substantive changes to the parties' statements of undisputed material facts." D.E. 292 at 2; *id*. at 2, n. 3.  The Court therefore does not consider Defendants' supplemental statement, D.E. 319-7, and any evidence submitted contrary this Court's previous Orders, D.E. 292, D.E. 300.

[7] Defendants attempt to characterize their request as falling under L. Civ. R. 56.1's provision for rebuttal evidence.  Def. Opp. at 4.  However, there is no difference between this request and the request for supplementation that Defendants made in November 2020, which the Court denied. *See* D.E. 294 at 1 (requesting "permission to supplement Defendants' R. 56.1 Statement of Material Facts Not in Dispute" with "fact testimony from Calisto Bertin.").

[8] Defendants, through citation, imply that the Court's local rules are invalid.  *See* Def. Opp. at 4-5.  The Court disagrees.

15

The Court turns to Plaintiff's arguments in favor of summary judgment.  Plaintiff argues that he is entitled to summary judgment on the contract-based claims because "Defendants have no admissible evidence whatsoever to controvert the sufficiency of the $2.7 million valuation of the Property on which Plaintiff offered to close."  Pl. Br. at 309-1.  However, Plaintiff's brief fails to discuss the elements of each of his affirmative claims and provides no discussion as to how the undisputed facts satisfy each element of his claims.  Nor does Plaintiff cite to the relevant contractual provision that he claims was breached.  In addition, it is not clear to the Court that Count Three of the Complaint, for specific performance, can stand as an independent cause of action.  *Cotter v. Newark Hous. Auth.*, No. CIV 09-2347 (JAG), 2010 WL 1049930, at *5 (D.N.J. Mar. 17, 2010), *aff'd*, 422 F. App'x 95 (3d Cir. 2011) (applying New Jersey law and finding that "[s]pecific performance may not stand as a claim, independent from a breach of contract claim. Instead, specific performance is an equitable remedy that may be granted by a court of equity in its discretion, if there is no adequate remedy at law."); *ADP, LLC v. Capote*, No. CV 15-1355JLLJAD, 2015 WL 13447655, at *1 (D.N.J. July 28, 2015) (applying New Jersey law and ruling that "specific performance is a remedy, and not an independent cause of action.").[9] Accordingly, the Court finds that Plaintiff has failed to meet his burden to show he "is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

Plaintiff also appears to concede that material facts are in dispute.  Specifically, Plaintiff states that "the only genuine issue for trial determination [is] the relief to which Plaintiff is entitled, most notably, the purchase price for Constantine's Interest" in the LLC.  Pl. Br. at 13.  As best the

---

[9] The Operating Agreement provides that "[t]his Agreement shall be governed by and construed in accordance with the laws of the State of New Jersey."  D.E. 311-2; D.E. 21-2 at 8.  And the parties agree that New Jersey law governs.  *See* Pl. Br. at 13, 17, and 20-24 (citing New Jersey state court decisions and statutes); *see* Def. Br. at 8-13 (same).

Court can discern, it appears that Plaintiff claims that Defendants breached the Operating Agreement by failing to sell him Constantine's interest in the LLC at the appropriate purchase price (as calculated in accordance with Sections 1.24, 14.2, and 14.4 of the Operating Agreement) by December 31, 2014. *See e.g.*, Compl. ¶ 41; *see* D.E. 21-2 at 10, 27, and 29. Accordingly, Plaintiff seemingly admits that the conflicting expert testimony creates a genuine disputed material fact as to the price that the Defendants were obligated to sell Plaintiff Constantine's LLC interest.[10] For that additional reason, Plaintiff's motion for summary judgment as to his affirmative claims is denied.

### 2. Plaintiff's Motion as to the First, Second, and Fourth Counterclaims

For the same reasons that the Court denied summary judgment as to Plaintiff's affirmative claims, the Court denies Plaintiff's motion for summary judgment as to Defendants' first, second, and fourth Counterclaims. Plaintiff has failed to provide any analysis as to the elements of Defendants' Counterclaims and how the undisputed facts demonstrate that it is entitled to judgment as a matter of law. In addition, Plaintiff admits that the applicable purchase price for Constantine's interest in the LLC remains a disputed fact. Pl. Br. at 13.

### 3. Plaintiff's Motion as to the Third Counterclaim

Plaintiff moves for summary judgment as to Defendants' third Counterclaim for breach of fiduciary duty. Specifically, Plaintiff contends that it is entitled to summary judgment as to Defendants' assertions that Plaintiff breached his fiduciary duties by (1) attempting to purchase

---

[10] In addition, the calculation of the purchase price for Constantine's LLC interest is more complex than simply determining the correct "Appraised Value" of the Property, as Plaintiff appears to claim. *See* D.E. 311-2; D.E. 21-2 at 8, § 1.24; Pl. Reply at 9 (admitting the "Estate is undisputedly entitled to full credit" for "receivables of the LLC" in the "calculation of the purchase price under Article 14 of the Operating Agreement."); Pl. Br. at 17 (same). Plaintiff made no attempt to address this issue.

the estate's interest at a "depressed value"; (2) failing to distribute rent received from Coffee Associates to the Estate; (3) failing to permit Defendants to review the books and records of the LLC; (4) causing the LLC to enter into the an unfair lease; and (5) failing to timely account for and pay rent due from Coffee Associates to the LLC.  Pl. Br. at 14.

As to the first allegation, Plaintiff argues that he is entitled to summary judgment that he did not attempt to purchase Constantine's interest in the LLC at a depressed value for the reasons set forth in his motion for summary judgment as to the contract-based claims and counterclaims. Pl. Br. at 14.  Specifically, Plaintiff contends that the "$2.7 million Appraised Value of the Property Plaintiff agreed to use in calculating the total purchase price . . . was not depressed."  *Id.*  However, as noted above, Plaintiff has seemingly acknowledged that disputed material facts existed as to the correct purchase price for Constantine's interest in the LLC.  *See e.g., id.* at 13 ("[T]he only genuine issue for trial determination . . . is . . . the purchase price for Constantine's Interest[.]").  The Court denies summary judgment on this ground.

Defendants' allegation that Plaintiff attempted to purchase Constantine's interest at a "depressed value" survives Plaintiff's motion for summary judgment.  In addition, with the exception of one reference to the applicable statute of limitations, Plaintiff has not cited any legal authority in support of his arguments for summary judgment as to Defendants' Counterclaims for breach of fiduciary duty.  *See* Pl. Br. 14-18.  Thus, even if Plaintiff is correct as to the remaining issues, the Court cannot conclude as a matter of law that Defendants' surviving allegation could not constitute a breach of fiduciary duty.  Plaintiff's motion for summary judgment as to the third Counterclaim is denied.

**4.  Plaintiff's Motion as to the Fifth Counterclaim**

Plaintiff next moves for summary judgment as to Defendants' fifth Counterclaim, for an accounting "with respect to Constantine Callas' membership interest in [the LLC]."  AA ¶ 77. Similar to Plaintiff's other arguments, Plaintiff does not cite to any legal authority in support of its argument.  Plaintiff argues that Defendants' counterclaim for an accounting "is obviated by discovery Defendants sought and received in this action."  Pl. Br. at 18.  However, Plaintiff provides no authority in support.  Similarly, Plaintiff argues that "the requested accounting is subsumed in the calculation . . . of the purchase price, which includes a specified portion not only of the Appraised Value of the Property, but also of a balance sheet calculation of assets and liabilities of the LLC."  Pl. Br. at 19.  Again, Plaintiff provides no authority in support.

Plaintiff further argues that Defendants' allegations that Plaintiff "may have" oppressed the rights of Constantine in his declining years is "contradicted by the undisputed evidence that . . . Plaintiff has not 'since his father's death . . treated unfairly or oppressed' Defendants or the Estate."  Pl. Br. at 18.  For this argument Plaintiff relies exclusively on his previous arguments made in support of his motion for summary judgment as to the contract claims and Defendants' breach of fiduciary duty Counterclaims.  *Id*.  Plaintiff also provides no legal authority in support. For example, Plaintiff argues that Defendants' claim that Plaintiff improperly caused the LLC to enter into an unfavorable lease with Coffee Associates is time barred under the applicable statute of limitations.  Pl. Br. at 16-17.  Plaintiff admits that the challenged lease was entered into, Pl. RSOMF ¶ 45, and that he signed the lease on behalf of both Coffee Associates and the LLC.  *Id*. Plaintiff claims that these acts could not support a claim for breach of fiduciary duty because the statute of limitations has lapsed.  However, as to Defendants' claim for an accounting, Plaintiff's brief provides no authority or analysis as to the applicable statute of limitations.  And Plaintiff also

fails to provide any authority stating such conduct could never, as a matter of law, support a claim for an accounting.  Plaintiff's summary judgment motion as the fifth Counterclaim is denied.

### 5. Plaintiff's Motion as to the Sixth Counterclaim

Plaintiff moves for summary judgment as to Defendants' sixth Counterclaim, Pl. Br. at 19-25, for member oppression.  The counterclaim alleges that Plaintiff "has engaged in conduct intended to oppress, and which does oppress, the Estate as a minority member of [the LLC]."  AA ¶ 79.  Plaintiff advances three arguments in support of summary judgment: (1) that New Jersey's Revised Uniform Limited Liability Company Act ("RULLCA")[11], N.J. Stat. Ann. § 42:2C-1, *et. seq.*, provides that the terms of the Operating Agreement control the subject of the parties' dispute and therefore the Counterclaim; (2) Defendants' exercise of the Put Option to sell Constantine's interest in the LLC left them without standing to pursue any rights in the LLC except to review the purchase price for Constantine's interest; and (3) that the uncontroverted evidence establishes that there has been no oppression.  *See* Pl. Br. at 19.

Defendants first argue that "every year since Constantine's death [Plaintiff] has sent to Yvonne Callas, as Co-Executor, a K-1 for Constantine's membership interest in the LLC."  Def. Opp. at 22.  From this, Defendants surmise that "a K-1 is only sent to an equity participant in the LLC."  *Id*.  However, these arguments rely on evidence not previously submitted with Defendants Responsive Statement of Material Facts or Statement of Material Facts.  *See* D.E. 319-1 at 2, ¶ 5; D.E. 319-7 ¶ 13.  As discussed above, the Court does not consider such evidence as the submissions violate this Court's Order that the parties "shall refer to their [original] statement of undisputed

---

[11] The parties concede that RULLCA governs here.  Pl. Br. at 20; Def. Opp. at 21; *see also IE Test, LLC v. Carroll*, 226 N.J. 166, 177, 140 A.3d 1268, 1275, n. 3 (N.J. 2016) ("All LLCs in New Jersey are now subject to the RULLCA.").

material facts" and that "[t]he Court will disregard any substantive changes to the parties' statements of undisputed material facts."  D.E. 292 at 2; *id.* at 2, n. 3.

Plaintiff claims that the terms of the Operating Agreement supersede RULLCA because "the terms of the Operating Agreement specifically address the subject of the parties' dispute in this case – the consequences of Defendants' put of Constantine's interest in the LLC[.]"  Pl. Br. at 20.  Plaintiff is correct that RULLCA provides that where there is an operating agreement, "the operating agreement governs . . . relations among the members as members and between the members and the limited liability company."  N.J. Stat. Ann. 42:2C–11a(1); *see also Foster Owners Co. LLC v. Farrell*, No. 14–5120, 2015 WL 778758, at *1 n. 2 (D.N.J. Feb. 24, 2015) (analyzing the relationships between members of a limited liability company pursuant to its operating agreement).  However, N.J. Stat. Ann. 42:2C-11c(7) continues that "[a]n operating agreement may not: . . . vary the power of a court to decree dissolution in the circumstances specified in paragraphs (4) and (5) of subsection a. of section 48 of this act."  Paragraphs (4) and (5) of subsection a. of Section 48 of RULLCA provide as follows:

> A limited liability company is dissolved, and its activities shall be wound up, upon the occurrence of any of the following:
> . . .
>
>> (4) on application by a member, the entry by the Superior Court of an order dissolving the company on the grounds that:
>>
>>> (a) the conduct of all or substantially all of the company's activities is unlawful; or
>>>
>>> (b) it is not reasonably practicable to carry on the company's activities in conformity with one or both of the certificate of formation and the operating agreement; or
>>
>> (5) on application by a member, the entry by the Superior Court of an order dissolving the company on the grounds that the managers or those members in control of the company:

> (a) have acted, are acting, or will act in a manner that is illegal or fraudulent; or
>
> (b) have acted or are acting in a manner that is oppressive and was, is, or will be directly harmful to the applicant.

N.J. Stat. Ann. § 42:2C-48a(4)-(5).  Plaintiff concedes that Defendants' member oppression claim is brought under N.J. Stat. Ann. § 42:2C-48a(5)(b).  Accordingly, Plaintiff's assertion that the Operating Agreement overrides Defendants' member oppression claim is incorrect.

Plaintiff next argues that N.J. Stat. Ann. § 42:2C-48a(5)(b) only permits suits by a "member" of an LLC and that Defendants do not have standing because "neither they nor the Estate became a 'member' of the LLC, or even sought such membership."  Pl. Br. at 22.  As an initial matter, it does not appear that Defendants are asserting their claim as transferees of an interest in the LLC.  Rather, the Defendants are asserting their claim on behalf of the Estate as executors thereof.  AA ¶ 79 (alleging Plaintiff "engaged in conduct intended to oppress, and which does oppress, the Estate as a minority member of [the LLC].").  Plaintiff appears to be correct that a member oppression suit may only be initiated by a "member."  *See* N.J. Stat. Ann. § 42:2C-48a(5)(b) ("[O]n application by a member . . .").  And Defendants do not contest this, *see* Def. Opp. at 23.  Thus, the question is whether the Estate is a member of the LLC.

The parties agree that the Operating Agreement governs this inquiry.  Plaintiff asserts that Constantine's death resulted in a "Transfer" of Constantine's interest under the Operating Agreement and that transferees do not become "Members" of the LLC unless admitted to the membership consistent with Section 10.3 of the Operating Agreement.  Pl. Br. at 22-23.  Defendants argue that a deceased member is a "Member" as defined in the Operating Agreement.  Def. Opp. at 23.  Specifically, Defendants reply that "[t]he Operating Agreement repeatedly describes a 'Deceased Member' as a Member."  Def. Opp. at 23.

"The principal goal of contract interpretation is to 'ascertain and effectuate the objectively manifested intentions of the contracting parties.'" *Heffron v. Adamar of N.J., Inc.*, 270 F. Supp. 2d 562, 570 (D.N.J. 2003) (quoting *Pacitti v. Macy's,* 193 F.3d 766, 773 (3d Cir. 1999)).   In determining the "objective intent" of the parties, the first step is to determine "whether the relevant terms and provisions of the contract are clear or ambiguous." *Id*.   The determination of whether a contract or a specific term therein is clear or ambiguous is a question of law for the court to decide. *Nevets C.M., Inc. v. Nissho Iwai Am. Corp.*, 726 F. Supp. 525, 531 (D.N.J. 1989).   An ambiguity exists if a contract is "susceptible to two reasonably alternative interpretations." *Id*.   Generally, the interpretation of ambiguous contract terms is a question of fact.   *Id*.   In determining the objective intent of the parties, "the terms of the contract must be given their plain and ordinary meaning." *Kaufman v. Provident Life & Cas. Ins. Co.*, 828 F. Supp. 275, 283 (D.N.J. 1992), *aff'd*, 993 F.2d 877 (3d Cir. 1993) (internal quotation marks omitted).

In the Operating Agreement, "Members" are defined as follows:

> [T]he persons who own Interests in the LLC or, with respect to any transfer of all or any portion of an Interest pursuant to Article X, the transferor of such Interest, unless and until the transferee thereof is admitted as a Member to the extent of the Interest transferred pursuant to Section 10.3.  The initial Members are the persons listed on Schedule A.

D.E. 311-2 at 6, § 1.18.  The Operating Agreement defines a "Transfer" as follows:

> Any disposition of an interest in the LLC by a Member (including, without limitation, gifts, sales, assignments, pledges, encumbrances, bequests, and all other inter vivos or testamentary dispositions) whether voluntary or involuntary, or whether pursuant to court order or by operation of law.

*Id*. at 8, § 1.23.  Article 10 governs the "Transferability of LLC Interests."  Section 10.1 of that Article provides that "the Transfer of any LLC Interest, except as specifically provided in this

Agreement, shall be null and void except if such Transfer is made with the consent of all other

Members." *Id.* at 18, § 10.1.  Section 10.2 of Article 10 goes on to identify "Permitted Transfers":

> (a) any Member and his or her Permitted Transferees[12] may Transfer all or part of his or her or their Interests in the LLC among themselves.
>
> (b) Interests in the LLC held by any custodian or guardian for any minor issue of a Member, or held by a trustee or trustees for the benefit of such minor issue, may be Transferred to such issue upon the attainment of the age of majority (or such later date as may be provided by the terms of the trust), or may be Transferred to a successor custodian, guardian or trustee.

*Id.* at 18, § 10.2.  Section 10.3 of Article 10 governs "Transferee's Rights."  That section provides

that a transferee of an "Interest" in the LLC

> [s]hall receive and hold the Interest in the LLC so transferred subject to the terms and conditions of this Agreement as though a party hereto, and no Transfer of the whole or any portion of such LLC interest shall be made to such transferee . . . and such transferee shall not become a substituted member in the LLC, unless and until such transferee is approved by all other Members and he or she executes and delivers to the Management Committee a counterpart of this Agreement, and such other instruments and documents as the Management Committee deems necessary or desirable, evidencing such transferee's agreement to be bound by all of the terms and conditions of this Agreement.

*Id.* at 18, § 10.2.

---

[12] "Permitted Transferees" is defined in the Operating Agreement to mean a Member's

> (i) spouse, (ii) any of his or her adult issue, (iii) custodians or guardians for his or her minor issue, provided that each such guardian or custodian shall be an individual who is either such Member, his or her spouse or any of his or her adult issue, and (iv) trusts of which each and all of the income beneficiaries and the remaindermen shall be members of the group composed of such Member, his or her spouse and his or her issue.

D.E. 311-2 at 7, § 1.21.

The plain terms of the Operating Agreement are not as clear as either party claims. Plaintiff's claim is essentially that the death of a Member results in a "Transfer."   However, that is not evident based on the definition of the term "Transfer" in the Operating Agreement, which only indicates that "bequests, and all other inter vivos or testamentary dispositions" result in a "Transfer." *Id*. at 8, § 1.23.  The implication of this language is that the creation of the Estate itself is not a transfer, but that a disposition from the Estate to a third-party is.[13]  Moreover, the definition of the term Member does not necessarily indicate that the Estate is not a Member, because that definition provides that "with respect to any transfer of all or any portion of an Interest pursuant to Article X" a member is "the transferor of such interest." *Id*. at 6, § 1.18.  It is also unclear the status of a deceased Member's interest in the LLC when the Put Option has been exercised but the sale of the deceased Member's interest has not closed – as here.  *See* Pl. Br. at 24.

Defendants' interpretation is not convincing either.  Defendants are correct that, at several points, Article 14 of the Operating Agreement describes a deceased Member as owning an Interest in the LLC.  *See* D.E. 21-2; D.E. 311-2 at 24, § 14.1 (describing an "Interest *owned by* such Deceased Member or Disabled Member." (emphasis added)); D.E. 311-2 at 25, § 14.2 (stating that "the Disabled Person or Deceased Person has the right to sell to each Member the Interest *owned by* the Disabled Member or Deceased Member." (emphasis added)); *id*. at 26, § 14.3 ("[T]he other Members have the right to buy all, but not less than all of the Interest owned by the Deceased Member or Disabled Member.").  However, the Operating Agreement's use of the term "Deceased

---

[13] In Reply, Plaintiff argues that the Estate and Constantine are separate, and that the Estate merely has the authority to "exercise the right to put Constantine's Interest . . . as the 'personal representative of a Deceased Member.'" Pl. Reply at 12.  Plaintiff, again, provides no authority in support.  Even assuming that the argument is valid, Plaintiff cites no law indicating that, upon his death, Constantine's other rights in the LLC were extinguished such that his personal representative could not assert a member oppression claim on his behalf.

25

Member" in Article 14 is inconsistent with the definition of that term in Article 1. Article 1, Section 1.9 of the Operating Agreement defines "Deceased Member" as an event – "the death of a Member during the term of this Agreement" – not a type of person. *Id.* at 5, § 1.9. Moreover, it is unclear whether Article 14 limits the rights of a deceased Member to the specific rights provided under that article or whether a deceased Member retains the rights of an ordinary Member with the additional rights provided under Article 14.

The Court finds that the Operating Agreement is ambiguous as to whether (1) the Estate of a deceased Member remains a Member of the LLC and (2) whether a deceased Member maintains the same rights as a living Member. "[W]here there is uncertainty, ambiguity or the need for parol evidence in aid of interpretation, then the doubtful provision should be left to the jury." *Id. Kristensons Petroleum, Inc. v. Explorer Mar. Cruises, LLC*, No. CV 14-5683-BRM-TJB, 2018 WL 497070, at *6 (D.N.J. Jan. 22, 2018). Accordingly, Plaintiff's motion based on the Estate's status as a Member of the LLC under the Operating Agreement is denied.

Plaintiff's final argument in support of his motion for summary judgment is that no oppression occurred. Pl. Br. at 25. Plaintiff's argument is one sentence long and fails to provide the elements of Defendants' Counterclaim, the relevant undisputed facts, or any other analysis. *Id.* Plaintiff has failed to meet his burden as to this argument.

## C.    Defendants' Motion for Summary Judgment

Defendants move for summary judgment as to "their third counterclaim . . . and on their sixth counterclaim." D.E. 302 at 1. The Court addresses each argument in turn.

### 1. Defendants' Motion as to their Third and Sixth Counterclaim

Defendants seek summary judgment as to their Counterclaim for breach of fiduciary duty and their Counterclaim for member oppression. Def. Br. at 11. Plaintiff first asserts that the Estate

is not a member of the LLC and therefore lacks standing to pursue such claims.  Pl. Opp. at 5 ("[T]he Estate is not and never was a Member of the LLC.").  In reply, Defendants do not appear to contest that membership in the LLC is a necessary predicate to their claims and instead argue that the Estate is a Member of the LLC.  Def. Reply[14] at 4.  The Court has already determined that (1) whether the Estate of a deceased Member remains a Member of the LLC and (2) whether a deceased Member maintains the same rights as a living Member are issues for the jury.  Because resolution of those issues is central to Defendants' motion for summary judgment on their third Counterclaim, Defendants' motion is denied.

Defendants do not appear to respond to Plaintiff's argument that the member oppression claims are also barred for lack of standing, Reply at 5, although it is clear that Plaintiff made the argument.  Pl. Opp. at 4; *see also id*. at 5; *id*. at 8-9.  In addition, it appears that Defendants' Counterclaim for member oppression is limited to Plaintiff's conduct toward the Estate.  *See* A.A. ¶ 79 ("William Callas has engaged in conduct intended to oppress, and which does oppress, the Estate as a minority member of Coffee Associates LLC.").  Plaintiff's argument as to standing directly implicates the Estate's status as a Member.  As explained above, because the Operating Agreement is ambiguous as to whether the Estate of a deceased Member remains a Member of the LLC, the matter is left for a jury.  Accordingly, Defendants' motion for summary judgment as to their sixth Counterclaim is also denied.

### D.   Defendants' Motion to Strike

On April 9, 2021, by way of letter, Defendants requested that the Court not consider Exhibits 1-4 and 13 to the Reply Certification of Plaintiff William Dean Callas, D.E. 336, in

---

[14] The Court notes that several pages of Defendants' reply brief appear in single line spacing, in violation of L. Civ. R. 7.2(d).

deciding the motions for summary judgment.  D.E. 340.  Specifically, Defendants argue that the documents "were not produced in discovery despite their being within the scope of [Defendants'] document requests," *id*. at 1, and therefore should not be considered as part of the summary judgment record.  Plaintiff responds that the requested relief should be denied on several grounds, including that Defendants' letter constitutes "an unauthorized sur-reply."  D.E. 342.  In resolving the motions, the Court did not rely on the exhibits and testimony in question.  Accordingly, Defendants' motion to strike is denied as moot.

## V.        CONCLUSION

For the foregoing reasons, the parties' motions, D.E. 301, D.E. 307, D.E. 309, and D.E. 340, are denied.  An appropriate Order accompanies this Opinion.

Date**:** August 4, 2021

_____
John Michael Vazquez, U.S.D.J.